ELLA MAE FRAME, Appellant, v. C. C. OLMSTED et al., Appellees.

**PARENT AND CHILD:** Torts of Child—Unauthorized Use of Automo-
1    bile. A parent is not responsible for a negligent injury inflicted by his child in the operation of the parent's automobile, when the operation was without the express or implied consent of the parent.

**EVIDENCE:** Admissions—In re Agency or Authority. Admissions by a
2    party as to his agency or authority in a prior occurrence, not made in the presence of the purported principal, are incompetent.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

MARCH 14, 1922.

APPELLANT brought this action against C. C. Olmsted and Earl Olmsted, to recover damages for injuries sustained by her in an automobile accident. C. C. Olmsted is the father of Earl Olmsted, and owner of the car in question. Earl Olmsted was driving the car at the time of the accident. Appellant was sitting on a bench, located on the parking between the sidewalk and the curb, near the southeast corner of Sixth and Corning Avenues, Des Moines, Iowa. Earl Olmsted, a minor of 19 years, drove the car from the north on Sixth Avenue at excessive speed, and struck appellant, injuring her severely. At the close of all the evidence, on motion of C. C. Olmsted, appellee, the court directed a verdict in favor of said C. C. Olmsted. The case was submitted to the jury as to defendant Earl Olmsted. Plaintiff appeals from the order and judgment thereon directing verdict in favor of C. C. Olmsted.—*Affirmed.*

*Chester J. Eller,* for appellant.

*Parsons & Mills,* for appellees.

ARTHUR, J.—The question presented is whether it was error 'to direct a verdict in favor of C. C. Olmsted. The issue of evidence was made as follows: It appeared without dispute

1. PARENT AND CHILD: torts of child: unauthorized use of automobile.

that C. C. Olmsted was the owner of the car; that defendant Earl Olmsted was his son, 19 years of age; that defendant Earl Olmsted, at the time of the accident in question, was driving his father's car; which was a 1914 Model National touring car; that the accident and consequent injury to appellant occurred substantially as alleged by appellant,—that is, that, while appellant was sitting on a bench within the curb line, Earl Olmsted drove the car with great speed, striking appellant, resulting in the injuries complained of. For the purpose of this appeal, it is not necessary to discuss the question of the negligence of Earl Olmsted as the proximate cause of the injury to appellant. The record shows that the jury found in favor of the plaintiff and against the defendant Earl Olmsted, and judgment was entered on the verdict against Earl Olmsted. No appeal is here taken from that judgment. Only an appeal from the verdict directed in favor of C. C. Olmsted is presented.

The accident occurred on Saturday evening, June 19, 1920, between 8 and 9 o'clock.

Paul Labowitz, called by plaintiff, testified:

"Mr. C. C. Olmsted lives across the street from where I live, 953 Twenty-fourth Street, and Earl Olmsted is his son. C. C. Olmsted owned a National touring car, which they used in and about their premises. I have observed Earl Olmsted driving and operating this car. I have seen him drive and operate the car with his father. I saw him drive the car once or twice before his folks went to California."

Jack Olds, called by plaintiff, testified:

"I live at 958 Twenty-fourth Street, next door to C. C. Olmsted. I never saw Earl Olmsted leave the house with the car without the folks."

W. H. Frame, called by plaintiff, testified that he is the husband of Ella Frame, appellant; that, during the middle of the week following the accident, he had a conversation at the Savery Hotel with Earl Olmsted. Frame was asked by appellant's counsel:

"Q. What was said at that time by Earl Olmsted?"

Subject to apt objection on the part of C. C. Olmsted, and the objection sustained as to C. C. Olmsted, witness answered:

"Earl Olmsted said he had driven a car for five years, 'not only our car, but other cars;' and that his father never objected to his using the car, and never refused him the right of the car; and he used the car quite frequently."

C. C. Olmsted testified in his own behalf:

"I live at 954 Twenty-fourth Street  Earl Olmsted is my son.  I am the owner of a car known as the National touring car, 1914 Model.  I used the machine generally.  Occasionally took the family riding.  I made a trip this summer to Portland, Oregon.  Left on the evening of June 16th, and returned July 24th. The automobile was left in the garage, and I went and purchased a new lock and hasp and put on same, and locked it up, and put the key in my pocket.  I instructed my son Earl that the car could not be used while I was gone.  Told him that a number of times.  I used the car that day [June 16th] to go out and get some of my tools, and ran it back and put the car in and pulled the key on it and put a new hasp on it and slipped the key on my key ring, and I supposed everything was safe. My son, Earl, did not have any permission to use the car.  My son drove it when me or his mother was with him, and going to and from on orders to get certain stuff.  I gave him orders from time to time.  The car was generally used for the benefit of the family.  When I left for Portland, one casing was down, no lights on it, and it was all out of repair.  The members of my family only went riding with me when we went out for material.  Earl Olmsted is 19 years of age last December.  I locked this car in that garage before I left.  The boy willfully and deliberately broke open the garage."

At the close of all the testimony, defendant C. C. Olmsted moved the court to instruct the jury to return a verdict for him, for the reasons:

(1)    That the evidence fails to sustain a verdict against him.

(2)    That the evidence affirmatively shows that the car was not being run with his consent or knowledge, at the time it was run.

(3)   The evidence affirmatively shows that the car was taken out against his express orders, without his knowledge or consent, and was being operated by the defendant Earl Olmsted on his own motion, and not in any way for this defendant.

The whole question involved is whether, under the testimony, there was a question for the jury as to the liability of the father, C. C. Olmsted. It is the position and contention of appellant that the statements of the minor son, Earl Olmsted, made to and testified to by W. H. Frame, husband of appellant, which statements were made about the middle of the week following the accident, were admissible to show that the car, at the time of the accident, was in the possession of and was being operated by the boy, with the consent of the father; and that he was, in fact, agent of the father at the time; and that such evidence should have been received in opposition to and in contradiction of the statements of the father that he had locked the car in the garage, and had forbidden the boy to use the car while he (the father) was absent from the city.

It is conceded that the statements made by the boy to W. H. Frame were not made in the presence of the father, owner of the car. Indeed, C. C. Olmsted, the father of Earl and owner

2. EVIDENCE: admissions: *in re* agency or authority. of the car, had not returned from his Oregon trip at the time of the purported admission of the boy. It is elementary that the declarations of Earl Olmsted, so made, not in the presence of C. C. Olmsted, could not be received in evidence against C. C. Olmsted, and that such testimony by W. H. Frame was properly excluded, as to C. C. Olmsted. It is scarcely necessary to cite authorities on this proposition, but see *John Gund Brew. Co. v. Peterson*, 130 Iowa 301, and cases therein cited.

One of our recent cases, *Sultzbach v. Smith*, 174 Iowa 704, is controlling, and must rule. In the *Sultzbach* case, the owner of the machine was out of the city at the time of the accident, and had expressly forbidden his son to drive his automobile at that time or at night, and he neither authorized, directed, nor consented to, nor had any knowledge of, the use of the machine by his son. We said:

"We think it may be safely said that it is established without any substantial dispute in the evidence that the son did not

have express permission of his father to use the automobile at the time of the accident in question; that the father was not at home at the time; that the son was joy-riding with friends at the time in question, and that no other members of the family were with him; that the son did not have the implied permission of his father to use the automobile at said time, because he had been expressly forbidden to use the car at night, or at any time except when accompanied by other members of the family; that the son was not engaged in his father's business, nor in any way acting as his agent at the time of the accident.''

The mere statement of the facts in the instant case leaves no question of the correctness of the ruling of the court in directing a verdict for defendant C. C. Olmsted. Before leaving home on the trip to Oregon, the senior Olmsted had purchased a new lock and hasp, and locked up his car in his garage, and put the key in his pocket, and instructed his son Earl not to use the car while he was gone, and put the key in his pocket and took it with him. Some time after the senior Olmsted left, the boy broke into the garage and got the car, and drove it to some sort of a picnic at Highland Park, and undertook to bring several young people home with him, at which time the accident occurred.

It is clear that the testimony offered by appellant to present an issue of fact as to the agency and authority of the boy to use the car was incompetent, and properly excluded as to C. C. Olmsted. But even if it should be conceded to be competent testimony, it is not directly contradictory of the father's testimony. The offered testimony does not refer to the time when the car was used by the boy when the accident occurred. It amounts to no more than a vague statement that at some time he had used the car with his father's consent.

We have carefully examined the record with reference to all questions raised by appellant, and find no error; and the judgment of the trial court is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.