J. O. WILLIAMS, Administrator, Appellee, v. J. D. COHN, Appellant.

**MOTOR VEHICLES:** Negligent Operation—Unobserved Person. The driver of an automobile is not, broadly speaking, under a duty, before putting the vehicle in motion, to look around or under it, in order to discover the possible presence of persons in a position of danger. A plaintiff seeking personal damages consequent upon a person's being run over is under an imperative necessity to show the *location* of the injured person just preceding the injury, or such a state of facts with reference thereto as will justify a finding that the driver (1) saw the person, or (2) ought, in the exercise of ordinary care, to have seen him.

Headnote 1:   28 Cyc. pp. 37, 46.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

JANUARY 19, 1926.

REHEARING DENIED APRIL 9, 1926.

ACTION by an administrator, to recover damages for the death of his intestate, alleged to have been caused by the negligence of the defendant in the operation of a truck. At the close of all the evidence, the motion of defendant for a directed verdict was overruled. Verdict was returned in favor of plaintiff in the sum of $1,500. Motion for new trial was overruled, and judgment entered in conformity to the verdict. Defendant appeals.—*Reversed.*

*McCoy & Beecher,* for appellant.

*Mears & Lovejoy,* for appellee.

DE GRAFF, C. J.—Plaintiff, as administrator of the estate of Francis Nicholson, recovered damages in the sum of $1,500 for the death of his intestate, alleged to have been caused by the negligence of an employee of defendant's in the operation of a delivery truck. Two specifications of negligence, which in legal effect constitute but óne ground, were submitted to the jury, to wit: That the said employee, while acting within the scope of his employment with defendant in the operation of said truck, (1) failed to exercise reasonable and ordinary care to look and ascertain whether the decedent was in close prox- imity to said truck before starting the same, and (2) failed to exercise reasonable and ordinary care to look and ascertain whether any small children, and especially plaintiff's decedent, were loitering or lingering in the vicinity of said truck before starting the same, and was negligent in failing to look before getting aboard said truck, before starting same.

The primary and controlling propositions relied upon by appellant in interrogative form are: Is the evidence sufficient to sustain the verdict? Did the trial court err in failing to submit to the jury, upon request, the defendant's theory of the case?

Some degree of negligence in cases of this character must be established, as the foundation of legal responsibility. *Borland v. Lenz*, 196 Iowa 1148. Negligence is predicated on duty, and presupposes the omission to fulfill the obligation imposed. This duty is imposed either by statute or by rule of common law. It may be owed to an individual or to the public generally; but he who seeks damage for an injury sustained must predicate and prove that the damage arose without fault on his part, through the omission of a person charged with a duty. *Fisher v. Ells- ton*, 174 Iowa 364.

Three essential elements are involved in every case of action- able negligence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that duty; (3) an injury proximately resulting to the plaintiff from such failure.

"When these elements are brought together, they unitedly constitute actionable negligence. The absence of any one of

these elements renders a complaint bad, or the evidence insufficient.'' *Upp v. Darner*, 150 Iowa 403.

With these legal propositions in mind, we ask, What facts were established when the plaintiff rested? Briefly summarized, the record discloses that, on Saturday afternoon, September 16, 1922, about 5:15, in broad daylight, a delivery truck driven by an employee of the defendant's entered the driveway of the A. E. Nicholson premises in Waterloo, Iowa, for the purpose of delivering groceries which had been ordered by Mrs. Nicholson; that at said time Mrs. Nicholson, with three of her children, respectively six, four, and one and a half years of age (the youngest being Francis, the decedent), was sitting on the front porch of their home; that she saw the truck enter the driveway, and knew its purpose; that she left the children, and went to the kitchen, to receive and check the groceries which were carried from the truck by the driver and his helper; that this delivery required about two minutes; that the truck came south on Rhey Street, and turned east into the Nicholson drive and stopped, with the rear end of the truck about even with the east end of the kitchen window, which window is 4 feet 8 inches from the northeast corner of the house; that the house faces west; that, while she was still in the kitchen, she heard someone scream, and, upon going to the door, saw the youngest child, Francis, lying about one foot behind the right front wheel of the truck; that the driver picked up the baby and handed it to her; that the doctor was immediately called, and that the child died about three hours after the injury; that she did not see the truck start forward, but she estimated that it moved between 12 and 14 feet before it stopped; that the truck was 14 feet and 2 inches long.

Upon cross-examination, she testified, with respect to the forward movement of the truck:

''It traveled some. I don't know just how many feet, of course. I was checking over these groceries with the driver, and I certainly wasn't expecting an accident to happen. There wasn't anything that especially called my attention to the location of this car, but I noticed it. I know the very spot where the boy lay. I was paying more attention to whether Haynes had given me the groceries that I had ordered than the location

of the car. I am not quite sure of this question of distances. The truck was about 5 or 6 feet wide. After the accident, the rear of the truck was about the width of the sidewalk—which would be three feet—east of the rear end of the house. The rear end of the truck was even with the east side of the sidewalk that goes up into this back porch. Q. So that the rear of the car wasn't 10 or 12 feet east of the rear end of the house? A. No, sir, I didn't say so. Q. The rear end of the car was about 3 feet east of the rear end of the house after the baby was injured? A. Yes. The driver had been delivering groceries at our house for about a year and a half, once or twice a week. He generally drove up about the same location as he did on the day the baby was hurt.''

The father of the child, who was called as a witness, was not present when the accident happened; but when he arrived home, the truck was still standing where it had stopped almost immediately when the child was injured. He testified that at that time the front wheel was within about 3 feet of the corner of the garden, which was about 27 feet from the northeast corner of the house.

This is the sum and substance of all testimony offered by the plaintiff to sustain the specifications of negligence in this case. There is not a line as to the conduct of the driver in the operation of the truck at the time and place in question. There is no fact or circumstance shown by plaintiff which would tend to establish the absence of reasonable and ordinary care on the part of the driver, or the violation of any duty imposed by law on him in the operation of the truck, or that the injury was proximately caused by the negligence of the defendant. It is elementary that the plaintiff had the burden to establish the negligence alleged in his petition.

It appears, however, that the defendant did not move for a directed verdict upon the conclusion of plaintiff's evidence, but proceeded with his evidence.

Defendant pleads nonliability; and it is his theory, under all the evidence, that, immediately prior to the accident, plaintiff's intestate was hidden in front of or underneath the truck, and that by reason thereof no duty was imposed by law on the driver to make inspection or investigation to ascertain if the

child was in or about the truck, in the absence of actual notice that the child was in close proximity thereto. If the evidence sustains this contention without conflict, the judgment entered must be reversed.

A driver of a truck is under no legal obligation to make a search around and under his car "lest a child too young for discretion and undirected by parents has tucked herself away in an obscure place beyond the casual and convenient notice of the driver." *Ostrander v. Armour & Co.*, 176 App. Div. 152 (161 N. Y. Supp. 961). See, also, *Bruhn v. Fort Dodge St. R. Co.*, 195 Iowa 454; *Thyssen v. Davenport Ice & Cold Storage Co.*, 134 Iowa 749; *Ziehm v. Vale*, 98 Ohio St. 306 (120 N. E. 702); *Routt v. Look*, 180 Wis. 1 (191 N. W. 557). We therefore inquire if the facts sustain defendant's theory.

In the last analysis, the material question is: What omission or commission occurred on the part of the driver that constitutes negligence, within the purview of the petition? It is also material to inquire, Where was the child at the time the driver left the Nicholson house, and immediately prior to the starting of the car? When the driver left the house, he went north, directly toward the truck. He was in a hurry with his deliveries; threw his basket into the truck, as he went around the rear end of the car to the driver's seat on the left-hand side. His helper left the house about the same time, and got in the seat on the right-hand side.

The helper was not in the employ of the defendant; and the trial court charged, and correctly so, that, under the facts admitted or shown, the defendant is not liable for the negligence, if any, on the part of the helper.

The undisputed evidence shows that the driver of the truck did not actually see the child Francis in a place of peril before the child was injured. The court so instructed the jury, and this instruction became the law of the case in this particular. It is not to be inferred, however, from this undisputed fact, if the child was, before his injury, in a place of apparent danger, and in a position where the driver of the truck, in the exercise of ordinary care, should have seen or discovered said child in time to have avoided the accident, that the defendant would be held harmless. The trial court so instructed. It is not, how-

ever, a question of instruction, but a question of the sufficiency
of the evidence to warrant the submission of the case to the jury,
in the first instance, and to sustain at this time the verdict re-
turned.

Does the evidence disclose the locus of the child immediately
prior to its injury? An affirmative answer must be given; and
neither court nor jury may disregard such evidence as having
no probative value, or as unworthy of credence, in the absence
of proof tending to impeach or contradict such testimony. This
court is committed to the rule that evidence which is uncon-
tradicted by fact or inference deducible therefrom is taken as
true, as a matter of law. *Hall v. Young,* 189 Iowa 236; *Curry
v. Bickley,* 196 Iowa 827; *Frame v. Olmsted,* 193 Iowa 412.
Therefore, unless the evidence presented a conflict in relation
to the location of the child at the time the rule of ordinary care
is applicable, there was nothing to submit to the jury. To this
point we now direct our attention.

The only direct testimony bearing upon this proposition
was given by an eyewitness who was walking almost directly
toward the truck. She observed the two older children go into
the house, and the child Francis go around to the rear of the
truck. At that time, this witness was "looking almost directly
east and a little to the south." She was the near neighbor of
the Nicholson family, and the accident undoubtedly left an
indelible impress upon her mind. We quote from her testi-
mony:

"I saw the baby come from the south, and it went around
the rear of the truck on the left-hand side and stood there a
moment, and then went around the front of the truck and stood
by the right front wheel. It stood on the left-hand side of the
right front wheel, under the mud guard or fender. From where
I could see him, he must have been up close to the wheel. The
fender was over it. I saw the delivery boys get into the car,
and saw them start. They drove from one to three feet, and
then stopped. I saw the baby when the driver picked it up and
gave it to Mrs. Nicholson. The rear end of the truck, when the
driver was in the house, was opposite the back porch."

This witness, when she made her observations relative to

the child's location with reference to the front end of the truck, was about 135 feet distant.

The helper who was assisting the driver in making deliveries at the time in question testified:

"When we drove up to the Nicholson house, I got out on the right-hand side, and Mr. Haynes [the driver] got out on the left-hand side, and went around to the rear of the truck. He carried a basket or two, and I carried in a broom and some flour. He left the house first, but we were both together. I got into the truck on the right-hand side, and Haynes went around back of the truck by the left-hand side and got in at the left-hand door. Before the car was started, and as I came out of the house, I did not see the baby. I did not see the baby at any time before it was injured."

The driver of this car was a licensed chauffeur, and had driven a truck for ten years. He had never had an accident similar to this one. He testified that, before he started the car, and as he was starting it, he looked in front of the car, and was noticing where he was going. He did not look, except casually, prior to taking his place in the driver's seat.

At the time of the accident it was broad daylight. There was nothing to obstruct the view of the driver as he left the back porch and went to the truck. Nor was there anything to obstruct his view ahead after he took his place in the driver's seat. May it be said that from the time he left the back porch to take his place in the driver's seat he was under legal obligation to ascertain or discover more than what the ordinary observation of a person, under the circumstances, would disclose? Clearly, he had no notice of the presence of the child in or about the truck, nor had he any reason, under the circumstances, to believe that any child was about the truck. There were no circumstances suggesting the necessity of special inquiry or investigation. The only direct evidence bearing on this question is that the child was *not* discoverable to the driver when the driver left the Nicholson porch, or after he had taken his position in the driver's seat, when he was under the legal duty to maintain a lookout to discover whatever such lookout would disclose. The testimony shows that the driver saw the child sitting on the front porch with its mother when he drove

into the yard. This was the only time he saw the child on that day until after the injury.

Verdicts cannot rest on conjecture or surmise. With no evidence to the contrary as to the locus of the decedent immediately prior to its injury, and under the applicable rule of law, we hold that plaintiff has failed to sustain the pleaded negligence. As said in *Hyde v. Hubinger*, 87 Conn. 704 (87 Atl. 790):

"The case is not one in which the plaintiff merely failed to present, as he was bound to do, evidence pointing to the defendant's negligence contributory to the injury to the plaintiff: the evidence presented went far to disprove such negligence."

Appellee, however, to meet the evidence and the theory of the defendant, argues that a conflict exists, by reason of a variance in the testimony as to the distance the car moved after it was started and before it was stopped at the time of the injury.

The evidence is not questioned that the body of the child was lying about one foot behind the right front wheel when the truck stopped. The location of the truck when it first stopped, near the northeast corner of the house, is not in serious dispute. According to the theory of appellee, under the testimony of the plaintiff's witnesses, by figuring the distance from the point where the car first stopped, the length of the truck, and the place where it stopped after the injury, the truck moved forward 12 to 14 feet. The testimony of the witnesses for the defendant and the mathematical deductions therefrom dispute this. We do not feel, however, that by reason of the mathematics of the case the physical-fact rule may be invoked. The testimony of the plaintiff does not establish that the point where the child was picked up was the location of the child when the truck started to leave the Nicholson premises. It is nothing more than a hypothesis which attempts to explain a situation. Under the undisputed testimony of the eyewitness as to the position of the child, it is as reasonable to say that the child was dragged the short distance the car moved after it started.

"It is one thing to have a state of facts from which differ-

ing conclusions may reasonably be drawn; quite another, to hold that one who has the burden of proving a given conclusion has discharged the burden by showing that a theory which sustains him is a possible one, if it also appear that a theory upon which his adversary would not be liable is just as possible.'' *Eisentrager v. Great Northern R. Co.,* 178 Iowa 713.

See, also, *Gibson v. Iowa Cent. R. Co.,* 136 Iowa 415; *Dingmon v. Chicago & N. W. R. Co.,* 194 Iowa 721; *Hemminger v. City of Des Moines,* 199 Iowa 1302.

There is no occasion, under the view expressed herein as to the evidence and the controlling principle of law applicable thereto, to note other propositions presented and argued by appellant. One comment may be made. If the evidence warranted a submission of this cause to the jury, the theory of the defendant, upon his request, should have been specifically stated in an instruction.

For the reasons indicated herein, the judgment entered is— *Reversed.*

EVANS, FAVILLE, ALBERT, and MORLING, JJ., concur.