28461. GLOVER *v.* DIXON.

DECIDED OCTOBER 28, 1940. REHEARING DENIED NOVEMBER 16, 1940.

Ernest J. Haar, for plaintiff in error.

Oliver & Oliver, Robert E. Falligant, contra.

PER CURIAM. In *Cohn v. Buhler*, 30 *Ga. App.* 14 (116 S. E. 864), it was held that the law placed upon the driver of an automobile the duty to use ordinary care, or such care as every prudent man should exercise in the same or similar circumstances, after the infant child was or, in the exercise of ordinary care on the driver's part, should have been seen by him, to avoid injuring such child. In *Smith v. Kleinberg*, 49 *Ga. App.* 194 (174 S. E. 731), this court held that it is the duty of those driving automobiles at a place on a public street in a populous locality of a city, where they know that a crowd of people is accustomed to gather or where such crowd is in their plain view, especially in the case of small children who might be playing in the streets, to be vigilant and cautious in exercising, in such circumstances, ordinary care which the law requires.

In paragraphs 11, 12, and 13 of the petition it is alleged, that in accordance with their custom certain children, including the deceased child who was six years old, climbed upon the truck of the defendant and were on its right side in plain view of the defendant's servants as they returned to the parked truck, "drove" these children "who were clinging and climbing upon" the truck "off of" the truck, and "immediately entered the cab" of the truck, and without warning "started the same suddenly in motion," driving off; that these servants so started the truck "without investigation to see whether or not" these children, including the plaintiff's child, "who had remained in close proximity to said truck," were upon the left side thereof or "hanging or climbing thereon or thereto, or in close proximity thereto;" that these servants "knew or in the exercise of ordinary care should have known" that the plaintiff's son and the other children "of tender years, acting upon a childish impulse and in accordance with practice," of which it was previously alleged that these servants knew, "would renew their attempt to get upon" the truck, and that any such child so upon

the truck would be subjected to danger and peril when the truck was started, although the child would not be aware thereof; that the plaintiff's son, after being driven from the right side of the truck, immediately ran to the left side and climbed upon the bottom rung of the ladder at the rear of the cab, and was in such position when the truck suddenly started off; and that the position of peril of this child "was plainly apparent" to the defendant's servants, "and could readily and easily have been seen by defendant's said servants and agents merely by turning their heads and looking through the rear window of the cab," which they failed to do, and failed to take any precautions to ascertain that no child was upon the truck. The petition charged that the defendant's servants failed to exercise ordinary care in the premises, and that had they done so they would have discovered the perilous position of the plaintiff's child upon the truck before it was suddenly, without warning, put in motion and driven down the street, resulting in the death of the plaintiff's son by being thrown from the truck when it "suddenly, sharply, and violently turned from the street into an intersecting street."

In Ziehm v. Vale, 98 Ohio St. 306 (120 N. E. 702, 1 A. L. R. 1381), a child four and a half years of age, together with two or three other small boys, was playing upon the right running-board of the defendant's car which was parked near the curb. It appeared that when the defendant returned to his car these children asked to be given a ride; that the defendant refused this, and drove them away from the car; that he proceeded to crank his car, and when he got in to start the car he saw that the child had remained upon the running-board; that the defendant "shooed him away with his cap," and the child "left the car for a short distance;" and that the defendant "did not know the child was on the running-board when the car started." It appeared that when the defendant drove the child away the second time he remained in close proximity to the car and got back upon the running-board on the side out of view of the defendant. The defendant requested the court to charge the jury that he would not be liable unless he actually knew that the child was on the running-board at the time he started the car or while he was running the car forward. He also requested a charge predicated on the principle that after driving the child away from the car no further duty devolved on the defendant,

and that no obligation rested on him to see that the child remained away. The trial court refused to apply the principle of non-liability as requested, but imposed upon the defendant the duty to use ordinary care "if the circumstances would apprise the defendant, as an ordinarily prudent man, that a child of four and one-half years, acting under childish impulses, would renew his attempt to get upon the running-board of the automobile." A judgment in favor of the plaintiff was rendered and the Court of Appeals of Ohio reversed that judgment, holding that "when the plaintiff left the street for the purpose of travel and got upon the defendant's automobile without invitation, he was not rightfully there." The Supreme Court of Ohio reversed the ruling of the Court of Appeals, and held that the defendant was liable if he saw and knew that the child was on the running-board or "by the exercise of ordinary care would have seen that said plaintiff was on the running-board of said car." "Where the owner of an automobile, upon returning to his car, finds an infant four and a half years of age thereon, and twice drives the infant from the car, the owner is not thereby absolved from further duty towards such infant. Under such circumstances, when the child still remains in close proximity to the car, the driver is required to exercise reasonable care to avoid injury to the child." LaRose v. Shaughnessy Ice Co., 197 App. Div. 821 (189 N. Y. Supp. 562), in reversing a judgment of nonsuit the court held that "a minor ten years of age, permitted to climb on a motor truck by the driver thereof, was not subject to the treatment of a mere trespasser, and the owner of the truck owed him a higher duty than to merely refrain from doing him a wanton injury."

The principles underlying the decision of this court in *Madden* v. *Mitchell Automobile Co.*, 21 *Ga. App.* 108 (94 S. E. 92, 1 A. L. R. 1386), are identical with those involved in the present case. While the facts are not exactly parallel, yet the decision in that case is authority for the ruling of the judge in overruling the general demurrer to the petition in the present case. The *Madden* case is referred to by the annotator in 1 A. L. R. 1386, on the question of liability for an injury to a child playing upon or in proximity to an automobile, where the driver of the automobile was in the position to be aware of the presence of such child. The law on the subject of the care which the operator of an automobile is obliged

to take to avoid injuring children is laid down in 2 Blashfield's Cyc. Auto. Law, § 1510, and in 1 Berry on Automobiles (6th ed.) § 519. "The degree of care to be observed depends, of course, upon the age of the child. The rule is that children must be expected to act upon childish instincts and impulses, and not to exercise the discretion and prudence necessary for their safety, with regard to dangerous agencies. . . It is not possible to lay down a rule for measuring the degree of care that a motorist owes to children, according to age, and the varying circumstances in which motorists come in close proximity to children. . . The doctrine that is applicable to this case is that when a truck-driver sees that children have climbed upon his truck while it is stopped, and knows that they intend to ride on the truck, he must not only put them off, before starting his engine, but must exercise reasonable care to see that they stay off. The younger the children are, and the more persistent they are, the more determined the truck-driver ought to be to avoid injuring them." See Llorens v. McCann, 187 La. 642, 656 (175 So. 442), citing 3 Am. Jur. 639, § 246. Under the facts alleged in the petition it was a question for the jury whether or not the servants of the defendant, had they exercised due care, would have discovered the presence of the plaintiff's child upon the left side of the truck; and it was likewise a question for the jury whether or not, in the circumstances narrated above, these servants should have anticipated that the plaintiff's child would act as he did, after being driven from the right side of the truck, run around it, and climb back on the truck on the other side. It was alleged that these servants started the truck, after driving the children from the right side thereof, without investigation to see whether or not these children or any of them (who it is alleged had remained in close proximity to the truck) were on the left side of the truck. Under the rulings and the principles stated above, the petition set forth a cause of action.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*

SUTTON, J., dissenting. Under its facts the case here presented is a novel one in this State. The nearest approach to it is *Madden* v. *Mitchell Automobile Co.,* supra. There the facts as stated by the court were: that the sight-seeing car by which the plaintiff's son, eleven years of age, was injured "was run from Chattanooga, through Rossville, to Chickamauga National Park, and carried

passengers for hire to points of interest along this route; that Burns, the driver, was in entire charge of the operation of the car, and his duties were to collect fares and operate the car; that at a place called the Iowa Monument the driver always checked the speed of his car and delivered a 'spiel' to the passengers, explaining this point of interest; that this place was a playground for children, especially for certain boys who congregated here and played ball; that it was the regular custom of these children, when the car 'slowed up' at this point, to mount the running-boards of the sight-seeing car which ran lengthwise of the car on both sides, about a foot above the ground; that this custom extended over a period of several years, and was well known to Burns, the driver who was in charge of the car on this occasion. One of the witnesses testified: 'It was the habit of us boys to ride when we pleased at this particular place; that had been our habit and custom about two years. Mr. Burns and the other drivers made no objection to our doing that. When I made these trips in these cars we got out there—I did—at the park and opened the gates for them. The driver, Mr. Burns, and the others knew we opened the gates; it was an accommodation to him and the passengers.' The testimony further showed that these boys would ride upon the car to a certain monument called the Wilder Monument, and there get off with the driver and passengers to visit this point of interest, and then ride to a certain place on the return of the car, where they all got off. The evidence tended to show that this custom was well known to the driver and was tacitly consented to by him; that on the day when deceased met his death one of his companions had already mounted the car as it approached the Iowa Monument; that as it approached, the boys were there in the road for the purpose of swinging it, as was their custom; that one of them ran across the road about fifteen feet in front of the car to the left-hand side of the car, and that the driver was looking ahead and must have seen this boy; that two of the boys were in the road on the right-hand side for the purpose of swinging the car, one of them being the deceased; that they were in this position some twenty-six feet in front of the car, so that the driver, in looking ahead, must have seen them as well as the boy who ran across in front of the car; that as the car approached the place of the Iowa Monument, where these boys were congregated in the road, it was running about four

miles an hour; that the deceased attempted to mount the running-board of the car, and in doing this fell under the wheels and was run over and killed; that just as the deceased mounted the car, or attempted to mount it, the driver 'speeded up' the car, and this sudden increase in speed caused deceased to fall. One of the witnesses testified: 'He speeded up his car to keep us off; he hadn't been used to speeding up his car, and I just assume that was the reason.'"

This court held that the ruling announced by the Supreme Court in *Ashworth* v. *Southern Railway Co.*, 116 *Ga.* 635 (43 S. E. 36, 59 L. R. A. 592), was applicable, where it was held: "Notwithstanding the plaintiff was an infant of immature years, he was wrongfully upon the running-board of the company's engine, and was therefore a trespasser. The only duty which a railroad company owes a trespasser is not to injure him wantonly or wilfully; and ordinarily this rule imposes upon the company simply the duty of taking proper precautions after the presence of a trespasser in a position of peril has been discovered. It will not do, however, to lay this down as an absolutely invariable rule. A railroad company may, by its own acts and conduct, impose upon itself the duty of anticipating the presence of a trespasser in such a position. . . A railroad company can not, in all cases, relieve itself from liability to a trespasser by showing merely that its servants and employees did not know of the presence of the trespasser, but in some cases it must go further and show that there were no circumstances from which an ordinarily prudent person would have had reason to anticipate his presence. . . Railroad companies may not be bound to anticipate that children will be allured by passing trains and attempt to board and ride upon them. But when the right of way of a railroad company extends through a place used as a playground by a number of children of ages varying from six to fifteen years, and when these children are accustomed continuously, every time the train enters the playground when they are upon it, to swarm upon the train and ride to the limits of the playground, and when the employees of the company know of this custom and make no objection to it, the company is bound to carry the burden which such a knowledge and tacit permission impose, and this burden would require the company to comply with the demands of ordinary care for the prevention of injury to the chil-

dren." It was stated by this court in the *Madden* decision: "While the deceased in the instant case is to be treated as a trespasser, the question to be determined by this court is whether or not the evidence submitted by the plaintiff, tested by the rules announced in the *Ashworth* case, supra, make such a case of wanton and wilful negligence by defendant's servant in charge of the car that the case should have been submitted to the jury, and whether, therefore, the court erred in granting a nonsuit." Applying to the evidence in the *Madden* case the rulings announced in the *Ashworth* case, this court ruled as follows: "It is for the jury to say whether these boys were accustomed to congregate at this point, and whether or not the custom of these boys to mount this sight-seeing car was so regular and continuous and was so well known to this particular driver as to make it his duty to anticipate, when he saw the boys there, that they would do as they had been regularly in the habit of doing—mount or attempt to mount his car when it decreased its speed at this point, and to take the necessary precautions for their safety. It is for the jury to say whether or not on this occasion the presence of these boys for this purpose was known to the driver. It is for the jury to say whether or not the driver's negligent conduct under the circumstances amounted to wantonness and wilfulness and was the proximate cause of the boy's death. Whether or not the deceased's failure to exercise due care—that is, such care as his age and capacity fitted him to exercise under the circumstances surrounding him at the time—would preclude recovery, is also a question to be passed on by the jury, under appropriate instructions from the court. The court erred in granting a nonsuit."

However, the *Madden* case is distinguishable on its facts from the case sub judice, and the application of the rulings there made do not require a holding that a cause of action was set out in the petition in the present case. The differences in the facts will now be set forth. In the *Madden* case the driver not only did not ordinarily attempt to keep the children from boarding the sight-seeing car, but he knew of their practice in mounting the running-board and riding upon it, and tacitly consented to their doing so. Only on the occasion of the death of the plaintiff's son did he do anything to prevent their mounting, and, contrary to what his custom in slowing down the car would naturally cause the children to ex-

pect in their practice of boarding the car, on that occasion he speeded up the car under circumstances where the jury would be authorized to find that at the very moment he should have known that some of them would, as did the deceased, attempt to mount the running-board. The jury might well find that he should have known that his deliberate act would endanger the life of any one boarding the car at its increased speed. In the present case the deceased was among those accustomed to congregate about the store and truck. While there are allegations appropriate to an attempt to set out a cause of action based on the "attractive nuisance" doctrine, following the old turntable cases, it could not be said that the ruling there made could be so extended as to apply to a truck lawfully being used in the transaction of its owner's business on the streets of a municipality; and in fact the brief of counsel for the defendant in error expressly disavows any intention to rely on such doctrine, but the right of the plaintiff to recover is based solely on the alleged wilfulness and wantonness of the defendant's servants in the respects named in the petition. But the allegations of the petition show that on the occasion of the death of the plaintiff's son, although he had boarded the truck while it was parked, he was driven away, and it is alleged that the 'servants "immediately entered the cab of the truck, and without any warning started the same suddenly in motion and drove" away. The deceased having been driven away, it does not appear that he was near enough to require any warning of the intention of the driver to start the truck; and construing the petition most strongly against the pleader, on general demurrer, it must be taken as not showing that the servants knew that the plaintiff's son was on the truck when it was put in motion. It is not alleged that they knew of any habit of the children to renew any effort to board the truck after they had once been driven away. It is true that the petition alleges that they knew, or in the exercise of ordinary care should have known, that the children would renew their attempt to get upon the truck; but this is only an allegation of constructive knowledge, and the facts do not show that they knew that, as alleged, the child, after being driven from the right side of the truck, immediately ran to the left side and climbed upon the bottom rung of the ladder just to the rear of the cab of the truck. The truck was on a city street where it may reasonably be assumed that much traffic

was in progress about 12:30 p. m. To transact the legitimate business of their employer it was necessary that the servants drive this truck through city traffic, and to avoid injury or death to others it was incumbent upon them to obey the law and keep a sharp lookout ahead. To hold that they must fulfill this duty and at the same time, when putting the truck in motion, detect the presence of a trespasser hanging behind the cab, would be to hold that they must do the impossible or be Argus-eyed. With no actual knowledge of anything to put them on notice that this child, after being driven from the right side of the truck, would renew his attempt to ride, I think it should be held as a matter of law that no duty rested upon those on the truck, in the circumstances, to look to the rear or inspect to determine if any child might be hanging on the truck. Likewise there was no duty resting on them so to drive the truck as to avoid injury to any one not entitled to be and not known to be on the truck in its progress through the streets.

Few cases are to be found in other jurisdictions dealing with the questions here involved; but the rulings in several pertinent cases are stated in substance by well-known text-writers, and are in harmony with what I have stated above. "If a driver has reason to anticipate that a child might be near his automobile, it is his duty to see that the way is clear before starting the vehicle in motion [Freehill v. Consumers' Co., 243 Ill. App. 1; Ostrander v. Armour & Co., 176 App. Div. 152 (161 N. Y. Supp. 961); Heikkila v. Standard Oil Co., 193 Wis. 69 (213 N. W. 652)]; but if he has no reason to anticipate the presence of children near his car, negligence can not be predicated on the mere fact that he started his machine, injuring the child [Heikkila v. Standard Oil Co., supra]. If the driver looks around the car and observes a child standing on the running-board, he should give it time to get off, and wait until it does get off [Ostrander v. Armour & Co., supra]; and where the owner or driver of an automobile finds a child of tender years on the running-board and drives it away, after which the child again returns to the car, when it is again driven away, the child still remaining in close proximity to the car, the driver is required to exercise reasonable care to see that it is not injured in another attempt to board the car [Ziehm v. Vale, 98 Ohio St. 306 (120 N. E. 702, 1 A. L. R. 1381)]. If in such case the infant, after having been so driven away, without the notice of the owner when

he starts the car, gets upon the running-board, the rule of care as to a bare licensee committing a trespass does not apply [Ziehm v. Vale, supra]. Ordinarily a driver is not requried to search for children on the running-board on the far side of the vehicle, or hidden underneath or in front of it, whom he can not see before starting [Williams v. Cohn, 201 Iowa, 1121 (206 N. W. 823)]." 2 Blashfield, Automobile Law, 554, § 1509. "A child who takes hold of a moving vehicle to gain a ride is a trespasser; and if his injury occurred while he was so related to the vehicle, he may not recover except for wanton injury. [Renfroe v. Collins & Co., 201 Ala. 489 (78 So. 395)]. However, a driver who, with full knowledge that a child is riding on some part of his automobile, although the child was not invited, can not consider the child as a trespasser to whom he owes no higher duty than to merely refrain from doing him a wanton injury [LaRose v. Shaughnessy Ice Co., 197 App. Div. 821 (189 N. Y. Supp. 562); Grabau v. Pudwill, 45 N. D. 423 (178 N. W. 124)]. Indeed, such a child has been considered as a gratuitous guest, to whom the driver's liability is the same as though he had in the first place invited him as a guest. Being such, the driver's liability is not limited to acts of active negligence alone [Grabau v. Pudwill, supra]. . . A driver is not negligent in failing to put a child off his truck when he had no knowledge, or reason to believe that the child was there [Samuel v. George Weidemann Co., 295 Fed. 314]." Id. § 1510. See also 5-6 Huddy's Automobile Law, 67, § 44. .

The petition shows that the child was a trespasser, and no circumstances are made to appear requiring the defendant, through its servants on the truck, to anticipate that the child was on the truck at any time after he was driven off. Therefore the petition did not set forth a cause of action, and the general demurrer should have been sustained.