Walter M. BARRYHILL, Jr., individually and as Administrator of the Estate of Joann Marie Barryhill, Deceased, Appellant,

v.

The UNITED STATES of America, Appellee.

No. 16835.

United States Court of Appeals Eighth Circuit.

March 23, 1962.

Max R. Teske, Jr., and Wirt P. Hoxie, of Pike, Hoxie, Butler & Teske, Waterloo, Iowa, for appellant.

Donald E. O'Brien, U. S. Atty., Sioux City, Iowa, for appellee.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

This appeal is from a judgment in favor of the United States, defendant in an action brought under the Federal Tort Claims Act (28 U.S.C.A. § 2671, etc.) to recover damages for the wrongful death of a minor child. The governing law concerning that occurrence is that of the State of Iowa. There is virtually no dispute in this case as to the evidentiary facts. The seasoned District Judge before whom the case was tried made findings of fact and separately stated his conclusions of law upon which the judgment appealed from is based. Tersely stated, the facts so found are these:

On June 2, 1960, Joann Marie Barryhill, deceased, was approximately five and one-half years of age. At the time of the incident hereinafter related she and her younger brother, Craig, were visiting at the residence of their aunt, Mrs. Florence Barth. The Barth residence is situated on Leonard Avenue in the City of Evansdale, Iowa, in a sparsely settled area. Across Leonard Avenue and just north of the Barth residence is a playground which was bounded by streets on three sides. Leonard Avenue as originally laid out was sixty feet wide; the traveled portion thereof, being composed of dirt mixed with gravel, was approximately twenty feet in width; the remaining portion was grass-covered. United States mail was delivered in the area of the Barth home by the Waterloo Post Office.

On the day in question Mrs. Barth went to visit a neighbor, Mrs. Timmer, and took Joann and Craig with her. After a while another neighbor of Mrs. Timmer, Mrs. Tiedt, and her two children, ages two and three years, also came to visit her. Later on, the four children went across the street from the Timmer home to play at the playground.

William J. Knapek, hereinafter referred to as Knapek, assigned to drive a United States Post Office mail truck, was delivering mail in the vicinity of the Barth home. Mailboxes in that area were on road-side posts. The mailbox at the Barth residence was on a post four feet from the south edge of the traveled portion of Leonard Avenue. The truck Knapek was driving was especially designed for the distribution of mail. It was rectangular in shape, except the front which sloped slightly from the top to the bumper. It had a right-hand drive. There were sliding doors with windows on both sides of the truck. There was also a door with a window at the rear end. A windshield extended across the front end and a window was located on each front side extending from the windshield to the front door posts. A rear view mirror was located on both outer sides of the truck attached to the upper forepart of the cab. There was a rear view mirror inside the cab for looking through the window in the rear door. In front of the steering wheel there was a small working area where mail could be sorted; thus the driving position of the truck was located opposite

the side doors. The truck had an automatic transmission.

In the forenoon of the day in question Knapek drove north on Fox Avenue to its intersection with Leonard Avenue. He turned east on Leonard Avenue and drove slowly on the south half thereof to the Barth mailbox. He stopped with the right-hand cab door opposite to that mailbox and deposited some mail therein without leaving the truck.

When Knapek drove into Leonard Avenue he noticed the four children playing in the playground area. They were the only ones there. After depositing mail in the Barth mailbox Knapek prepared to start for the next mailbox. He was then in a seated position in the truck. Before starting up he looked through the windshield and also looked to the sides by means of the side windows. He also looked to the rear by means of the rear view mirrors. Upon looking to the north toward the playground across Leonard Avenue, i. e. to the left and somewhat rearward, Knapek saw a small boy (later identified as Craig) walking on the grass-covered bank on the north side of the Avenue. He observed that the boy had stopped and was not going to attempt to come across the Avenue toward the truck. He then started the truck slowly forward toward the next mailbox. When he had gone some distance he heard screaming. He drove back to the vicinity of the Barth mailbox. Joann Barryhill was lying in the street, seriously injured and bleeding. There was a pool of blood about twenty-eight feet east of the Barth mailbox. There seemed to be no doubt that Joann had come in contact with the truck. When Knapek returned to the vicinity of the Barth mailbox it was the first time he had ever seen Joann near the street or known that she had been in the vicinity of the truck. He drove Joann to the hospital. She was dead on arrival. Her death was caused by a skull fracture. She had not been run over by the truck. An examination did not reveal any evidence as to the point where she came in contact with the truck; but that she was struck by some part thereof seems obvious and the trial court so inferred.

By its Finding of Fact No. 8, the Court found:

"Joann was forty-five inches in height. The bottom of the windshield was fifty-six inches in height. A number of tests were made as to the range of visibility of the driver when seated. An object forty-five inches in height could not be seen through the right side of the windshield if the object was within twenty inches; it could not be seen through the middle of the windshield if it were within thirty inches; it could not be seen at the left front corner of the truck if it were within forty-eight inches; it could not be seen to the left of the cab if it were within forty-eight inches. *By means of the rear view mirrors, the driver could see to the rear and to the right and left. However, an object forty-five inches in height could not be seen by the driver by means of a rear view mirror if it were alongside the middle of the truck. Therefore, so far as a child forty-five inches in height was concerned there were so-called blind spots along the side of the truck and in the vicinity of the front of the truck where such child could not be seen by the driver of the truck.*" (Emphasis added.)

There was testimony adduced and the Court found: That the left-hand door of the cab was closed at all times here considered; that at the time the truck stopped at the Barth mailbox Joann was either in the playground or in the ditch on the north side of Leonard Avenue; that Joann went over close to the left-hand side of the stopped truck to the rear of the cab door and was dancing or skipping; that the truck started up and then seemed to come to a momentary stop, or near-stop, and at that moment Joann ran quickly in front of the truck with her skirt touching the front bumper as she went around the left front corner of the truck; that the truck then went

forward and Joann came in contact with the front end of the truck. Knapek did not sound the horn on the truck in moving away from the Barth mailbox.

Finding of Fact No. 10 as made by the Court is stated thus:

"After considering all the pertinent evidence and the inferences which may be properly drawn therefrom, the Court finds that what happened is as next set forth. At the time Knapek was approaching the Barth mailbox, Joann was swinging on a swing and her brother, Craig, was playing in a sandbox in the playground. Mrs. Tiedt's small son called attention to the approaching mail truck. As the mail truck drew near the Barth mailbox Joann started across the grass-covered portion of Leonard Avenue immediately to the south of the playground. As Knapek was depositing mail in the Barth mailbox she moved quickly across the traveled portion of the Avenue and reached a place closely alongside the truck to the rear of the cab door. Her little brother, Craig, started to follow after her but stopped on the north side of the Avenue. When Knapek made his observations before starting away from the Barth mailbox, he was unable to see (Joann) because she was standing alongside the *middle* of the truck. After the truck slowly moved away from the Barth mailbox, it came to a momentary stop or near stop. At that instant Joann darted from alongside the truck around its left front corner in the path of the truck which was then moving forward again. As she darted to the front of and in the path of the moving truck, she was hit by its front end and her skull fractured. *The area in which (Joann) moved from the side of the truck to the front of the truck was an area in which Knapek was unable to see her. The situation was that Joann darted from a place of concealment through an area concealed from the driver's vision into*

*the path of the moving truck."* (Emphasis added.)

In the light of all the above facts the Court by its Finding of Fact No. 11 stated: "Plaintiff has not established by a preponderance or greater weight of the evidence that Knapek was guilty of negligence under either the common law or statutory law of Iowa." Thereupon it entered conclusions of law to the effect that defendant was not liable to plaintiff in his capacity as the father of Joann or in his representative capacity as Administrator of her Estate, directed that judgment be entered in favor of defendant on both divisions of the complaint, and dismissed the complaint, with prejudice, without costs to either party.

It is from such judgment that appellant prosecutes this appeal. Appellant's assignments of error for reversal thereof are (1) The Court erred in finding there was a blind spot along the side of the mail truck so that an object forty-five inches in height could not be seen by the driver by means of the rear view mirror, for the reason there was no evidence in the record to support such finding; (2) That the Court erred in finding Joann was in a place of concealment for the reason that under the law of Iowa a "blind spot" due to construction, maintenance or use of the driver's own vehicle is not a place of concealment; and (3) Erred in finding plaintiff failed to establish by a preponderance of the evidence that defendant's employee Knapek was guilty of negligence under Iowa law.

In any consideration of appellant's assignments of error it should be recalled to mind: The findings of the District Court as made are presumptively correct. McMahon v. City of Dubuque, Iowa, 255 F.2d 154 (8 Cir., 1958), cert. den. 79 S.Ct. 53, 358 U.S. 833, 3 L.Ed.2d 70. In a case tried before a court, without a jury, the reviewing court must take that view of the evidence most favorable to the prevailing party. Wilson v. New York Life Ins. Co., 250 F.2d 649 (8 Cir., 1958). A District Court's fact finding, though embodied in a conclusion of law, is still presumptively cor-

rect and will not be disturbed unless clearly erroneous. Fix Fuel & Material Co. v. Wabash R. Co., 243 F.2d 110 (8 Cir., 1957); Star Bedding Co. v. Englander Co., 239 F.2d 537 (8 Cir., 1957); Farm Bureau Co-Op. Mills & Supply, Inc. v. Blue Star Foods, Inc., 238 F.2d 326 (8 Cir., 1956). Further, that insofar as the facts are concerned in a given case and the reasonable inferences to be drawn therefrom appellees must be given the benefit of all favorable inferences which reasonably may be drawn from the evidence. Cashman v. Mason, 166 F.2d 693 (8 Cir., 1948). The effect of Rule 52, F.R.Civ.P., 28 U.S.C.A. is that if facts as found by the District Court, sitting without a jury, warrant conclusions and inferences to be reasonably drawn from the evidence, the Court of Appeals will not disturb them unless clearly erroneous and where different inferences might reasonably be so drawn from the evidence this Court will not substitute its judgment for that of the trial court unless we are left with a definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; Freightway, Inc. v. Stafford, 217 F.2d 831 (8 Cir., 1955).

Appellant's presentation of his assignments of error in the case at bar is wholly negative in character. That is to say, he does not, by brief or argument, undertake to point out affirmatively any fact appearing in the record of this case, either proven by him or which may be inferred from the evidence adduced by defendant, that is not covered by, or is *contra* to, the findings of fact as made by the District Court. All that appellant says is that there is no evidence in the record of this case to support Findings of Fact 8, 10 and 11, above noted, and particularly the italicized portions thereof. He candidly says that "with exception of the above-mentioned findings— appellant has no quarrel with the * * findings of fact" otherwise made in the District Court.

As we view this appeal the real question for consideration is not so much whether there is "*no* evidence in the record to support the District Court's finding of fact that "an object forty-five inches in height *could not* be seen by * * * (Knapek) by means of a rear view mirror if it were alongside the middle of the truck" but, rather, whether there is *any* evidence in the record establishing that if such an object was so juxtaposed at the left middle side of the truck in question it could or should reasonably have been seen by Knapek through the rear view mirror before he started up the truck; and, secondly, what duty Knapek had under the law of Iowa to discover Joann Barryhill when she was so positioned.

▪ Appellant asserts that appellee made no experiment or measurements to ascertain that an object forty-five inches in height could not be seen by means of the rear view mirrors on the truck. Neither did appellant proffer any such evidence. As appellant says, "the photographs of the truck (which were introduced in evidence as exhibits and have been lodged with us) merely show the mirrors and do not show what could be seen from them." Knapek testified,. however:

> "I looked through both of my rear view mirrors, which we normally do, to see if there is anyone on either side of the truck, because usually kids, or anyone, they try to get the mail out of the box, and they get fairly close to the truck because the mail box is right up next to the truck. I didn't see anyone on either side of the truck, or anyone in front of me or behind me, so that's why I thought everything was clear, and then I went to go to my next box."

Appellant concedes that this testimony of Knapek and that hereinafter noted, is all that appears in the record corcerning the rear view mirrors and what could be seen through them. Notwithstanding, appellant says:

"The court's finding concerning the field of vision through the rear view mirrors not only finds no support in \* \* \* (the above) part of Mr. Knapek's testimony but is actually contrary to it. \* \* \* If this was not so (appellant reasons) why would \* \* \* (Knapek) say that it was the normal procedure to look through the rear view mirrors to see if children were along side of the truck, especially when the driver also said that children usually get fairly close to the truck? \* \* \* If therefore the Court chose to disbelieve Mr. Knapek's testimony in respect to vision through the rear view mirrors, *it was faced with the situation where there was no evidence concerning such vision.*" (Emphasis added.)

It is most difficult to follow appellant's argument in this case, but this much is certain from the foregoing; such being the status of the record in the case at bar, the above-quoted contention of appellant depicts a *felo de se*, fatal to appellant's right to recover any damages against defendant in this case; for appellant in effect thereby concedes that he did not sustain the burden of proof which the law cast upon him, i. e. to prove that appellee, or one for whose conduct it was responsible, was negligent as claimed, viz. that Knapek failed to keep a proper lookout and had he done so he reasonably could have seen Joann in a position of peril. The duty to maintain a lookout under Iowa law is not a statutory, but a common law, duty to exercise ordinary care under the circumstances. Miller v. Stender, 98 N.W.2d 338 (Iowa 1959). "Proper lookout means being watchful of the movements of one's own vehicle as well as other things seen or seeable, and involves the care, prudence, watchfulness and attention of an ordinary, careful and prudent person under the circumstances" which always presents a question of fact for determination by the trier of facts. Ritter v. Andrews Concrete Products & Supply Co., 250 Iowa 297, 93 N.W.2d 787, 789.

So the question at this point is—does the record in the case at bar reveal that Knapek in the exercise of due care could have seen Joann in a position of peril when he looked through his left rear view mirror? The only evidence on that subject is that given by Knapek, and exhibits introduced in evidence. He testified: "The mirrors show only what is between the mirror and the rear of the truck. They do not show anything in front of the mirrors. \* \* \* The one on the left side is adjusted so that it looks along the left rear and left side of the truck." There was evidence, and the District Court found, that Joann stood near the left side door of the truck when it was first started forward. The truck thereafter came to a near stop and then moved ahead. It was when the truck came to a near stop that Joann ran around in front of it so close that her skirt was touching the front bumper. The District Court had in evidence before it photographs of the truck, showing the position of the rear view mirrors. There was also in evidence, measurements as to what could be seen through the windows along the left front side and in close proximity to the front of the truck. From such evidence the District Court found that Joann, because of her height and juxtaposition to the truck, was in a "blind-spot along the side of the truck in the vicinity of the front of the truck where \* \* \* (she) could not be seen by the driver" when he started forward. From our reading of the testimony, that is a reasonable and logical inference to be made from all the evidence. Such finding does not have the import that appellant attaches thereto. It is not tantamount to a finding that because of the construction of the truck Joann could not be discovered in peril and therefore defendant was not liable for her death because the truck's construction obscured his view. It is as specific a finding as the District Court could make, that Knapek could not discover Joann's peril because there was no evidence establishing how, when, or where Knapek could by the exercise of

due care have discovered her peril, but negligently failed to do so. There was no evidence adduced from which it can reasonably be inferred that Knapek had any reason to assume that Joann, or any other child, was in close proximity to his truck when he started up. There was no legal duty imposed on Knapek to get out of his truck and search around it to discover Joann. Williams v. Cohn, 201 Iowa 1121, 206 N.W. 823 (1926). She was hidden from his vision at all times. No facts appear in the record of this case from which it can be factually found, or from which it could possibly be said as a matter of law, that Knapek saw or by the exercise of ordinary care should have seen Joann hidden in front of his truck or in any other position of peril of being injured thereby, at any time. Cf. Williams v. Cohn, supra; Westenburg v. Johnson, 221 Iowa 134, 264 N.W. 18.

■ We do not have here a case of the sudden appearance of a child entering into the path of a moving automobile; nor one where the driver of a truck had previous knowledge that children were playing around his truck before he started forward. The facts here are more like Williams v. Cohn, supra, an action for wrongful death of a child who hid himself under a delivery truck while the driver thereof was making a delivery to the child's home. There, as in the case at bar, the driver of the truck never did see the child before it was run over. The plaintiff (appellant there, as here) failed to sustain the burden imposed on him by law to establish negligence on the part of the defendant (appellee) as alleged. In order to exonerate the defendant from a charge of negligence it is not necessary for such defendant to prove that he was not negligent. Williams v. Cohn, supra.

■ From what is above said, we see no need to further expatiate upon the proposition that under Iowa law a "blind spot" due to the construction, maintenance, or use of one's own automobile is not a place of concealment. Manifestly, the findings of fact as made by the District Court and judgment entered in the case at bar were not premised in that fact.

Mr. Knapek, the driver in this case, lived up to the standard of care required of him. The precautions he took were all that could reasonably be required. There was no evidence that he had any grounds for believing that Joann might be, or would be, in any position near the truck which would involve danger to her. Her death was most unfortunate. It was caused by an accident.

The judgment appealed from is affirmed.