DAVID SCOTT, appellant, v. CITY OF SIOUX CITY, a municipal corporation, appellee.

No. 50931.

(Reported in 123 N.W.2d 402)

SEPTEMBER 17, 1963.

Edward E. Baron and George F. Davis, both of Sioux City, for appellant.

Neil R. McCluhan, of Sioux City, for appellee.

HAYS, J.—Plaintiff owns a property located at the northeast intersection of Fifth and Jackson Streets in Sioux City, Iowa, on which is located a building divided into four business or store rooms, all of which face on Fifth Street. Fifth Street runs east and west, Jackson Street runs north and south. The City owns and operates a municipal waterworks with city-wide water distribution. It has a main on Fifth Street and also one on Jackson Street.

It is conceded that the defendant has sole and exclusive control over all the water mains; that all connections with the mains by water consumers are installed by the City and under City ordinances, in effect from 1913, the responsibility for all

lines from the main to the place of consumption has been upon the consumer. At least from 1884 and prior to 1913 the consumer was responsible for the line only from the outside line of the sidewalk to the place of consumption. Water installations usually have two valves. The one at the main itself, called a corporation cock, is exclusively under the control of the City. Between the main and the place of consumption, usually in the parking, is a valve or curb stop on the service line which may be used by the consumer or by the City to control the flow of water onto the premises. The corporation cock can only be reached by excavation to the main itself, while the curb stop is fitted with a pipe running to the surface of the ground in which may be inserted a key to open and close the same. It also appears that it is and has been for years the practice or custom of the defendant-City in cases where an existing service line is disconnected and a new connection made in the same vicinity, to close the corporation cock on the old or discontinued service line and cut the service line at the time that it connects the new line to the main. The reason for this being "that if they [service lines] are shut off at the building and not disconnected at the main there is a very real danger of them [service lines] corroding or giving out and water coming out onto the property" as the service lines are not made of the same durable material as are the mains.

On January 4, 1960, plaintiff observed that cracks were appearing in the walls of his building, which it clearly appears were due to water seepage from the defendant's water system. Records at the City office showed that in 1887 four three-fourths inch taps or corporation cocks were attached to the main on Fifth Street at a point 71 feet east of Jackson Street; also on Fifth Street 65½ feet east of east line of Jackson Street and two feet from the curb was a stop box or curb stop. This same record states that "all taps off at main. 7-4-1934 (WH)." On January 7, 1960, the city employees, seeking the source of the seepage, excavated to the main at the place where the four taps were and found the corporation cocks open, contrary to such record. When the four taps were closed the flow of water ceased. In reaching these taps water was encountered in such quantities as

to require the use of two pumps to clear the excavation. This water came into the excavation from the north, toward the main, and at the time the corporation cocks were closed and the excavation filled and pavement restored, no one knew the source of the leak. It was known that there was no leak at the main. Over a year later, April 1961, and after the trial had started and both sides had rested, at the direction of the trial court the case was reopened and a new excavation made "to determine what did actually exist under the ground at the area of Fifth and Jackson with reference to the Scott property and particularly with reference to the water connections from the main."

The excavation revealed the main, the four corporation cocks and leads attached thereto, which had been cut by the City in January 1960; the four three-fourths inch leads went into a two-inch header, several feet north of the main and parallel therewith; a two-inch pipe extending north and west from this header toward plaintiff's property for a distance of some ten feet where it connected with a curb cock with the pipe continuing north a foot to a one-half inch union. This pipe then continued north into plaintiff's property. The curb cock was buried under at least two feet of dirt and pavement with no access thereto except by excavating. It had been so buried at least since 1932 and had been about seven eighths closed by someone at sometime not disclosed. The union, a foot north of the curb cock and located about a foot north of the then outside line of the sidewalk, had deteriorated and broken. It seems to be agreed that the source of the leak in 1960 was from this union.

I. Count I of the petition asserted several specific alleged acts of negligence including failure to shut off the taps in the water main thus allowing the water to escape through the deteriorated service line. The trial court held plaintiff failed to prove this alleged act of negligence and also that such negligence, if proved, was the proximate cause of the damages. This is assigned as error.

It is conceded the City was acting in a proprietary capacity in the operating of the waterworks and would be liable for damages due to the negligence of its employees. Dougherty v. City of Sioux City, 246 Iowa 171, 66 N.W.2d 275. It is con-

ceded that the City has always retained exclusive control of and over the water mains which included the installation of all service lines with the main itself by the attaching of the corporation cocks thereto. Under the ordinances in effect since 1913 the consumer was responsible for the installation and maintenance of the service line from the main to the place where the water is consumed. Prior to 1913 the ordinance made the consumer responsible for the service line from the outside edge of the sidewalk to place of consumption. All parties seem to be agreed that the water which caused the damage to plaintiff's properties escaped from the defendant's water system through the deterioration union, located on the service line about two feet within the then outside edge of the sidewalk. It is conceded that had the curb cock been entirely closed no leak would have occurred at any place beyond said cock. It is also conceded that had the corporation cocks been closed, concededly they were not, there would have been no leak at all.

The determinative question on this assigned error is whether or not there was any duty upon the City to close the corporation cocks under the situation here. Williams v. Cohn, 201 Iowa 1121, 206 N.W. 823; Upp v. Darner, 150 Iowa 403, 130 N.W. 409, 32 L. R. A., N. S., 743, Ann. Cas. 1912D 574. The only evidence bearing upon this question is found in the testimony of William J. Hogan, plumbing inspector for the defendant. He states that it has been the policy of the City to cut off all old service lines at the respective corporation cocks *where a new one is installed at about the same place*. Even assuming such a practice has reached the status of a duty, there is nothing in the record showing that at the place where the corporation cocks in question were located on the main, a new service line was to be installed, in fact the record is entirely silent on the question. Appellant places stress upon the fact that the City records show that the cocks had been cut when as a matter of fact they had not. We, like the trial court, place little value upon this City record as it certainly does not prove a duty upon the City, as claimed by appellant, and no estoppel is pleaded or claimed. We think plaintiff has failed to prove a duty upon the City to close

the corporation cocks in question and the court was correct in dismissing Count I of the petition.

II. Error is assigned in the dismissal of Count II which is based upon the doctrine of res ipsa loquitur.

The trial court held the doctrine did not apply and that the instrumentality causing the damage does not appear to be exclusively under defendant's control; that under the most favorable view for appellant, the control was in the defendant and the appellant.

█ Many opinions have been written dealing with and explaining the doctrine of res ipsa loquitur, and we need not repeat them except to say that where an injury occurs by instrumentalities under the exclusive control and management of the defendant and the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the happening of the injury permits but does not compel an inference that the defendant was negligent. Breeding v. Reed, 253 Iowa 129, 110 N.W.2d 552; Brown v. Sioux City Building Corporation, 248 Iowa 948, 83 N.W.2d 471; Eaves v. City of Ottumwa, 240 Iowa 956, 38 N.W.2d 761, 11 A. L. R.2d 1164; 38 Am. Jur., Negligence, section 300.

█ The trial court held the record failed to establish exclusive control of the instrumentality causing the damage to be in defendant. Generally speaking, we think of a waterworks, such as here, as embracing the entire system of mains and pipes from the source of the water to the place of its consumption. This, however, is in no sense determinative of our question. The question here turns upon the legal control or custody. Legally, the City has exclusive control and responsibility of and over the water mains. The service pipes or lines are by ordinance made the responsibility of the private consumer and the legal control thereof is, at least partially, under the control of the consumer. The record shows the leak was in the service line, which had been discontinued years ago and not in connection with the installation of a new service line from the main.

Appellant states that the City has left unanswered many questions relative to installation of the service lines, the disconnection thereof, the failure to close the corporation cocks and

the failure to completely close the curb cocks, all of which information was, or at least should be, available to the City but was not to plaintiff. This all may be true, but in the absence of a showing of exclusive control of the instrumentality the doctrine does not apply and such a showing would be immaterial. We think the trial court was correct in refusing to apply the res ipsa loquitur doctrine.

We find no error and the judgment is affirmed.—Affirmed.

LARSON, THOMPSON, PETERSON, THORNTON, MOORE and STUART, JJ., concur.

GARFIELD, C. J., and SNELL, J., dissent.