## LEGALITY OF CONTRACT FOR CONSTRUCTION OF SCHOOL BUILDING AT A COST IN EXCESS OF BOND ISSUE.

Common Pleas Court of Paulding County.

### McAlexander et al v. Haviland Village School District et al.

Decided, December 18, 1906.

*Schools—Contract for Building School House—Cost in Excess of Bond Issue—Permission to Change Bid Renders Contract Void—Discretion of School Board—Injunction Against Unwarranted Exercise of—In the Matter of Submitting Propositions for Bond Issues—Money Paid on Executed Illegal Contract can not be Recovered—Sections 2834b, 3991, 3988, 2303 and 1536-205—Bids and Bidding.*

1. A contract for the building of a school house, at a cost in excess of the amount raised for that purpose from an issue of bonds, is not illegal and void for want of authority on the part of the board

of education to make such a contract after having underestimated the amount of money needed.

2. A contract for the building of a school house, awarded to a contractor who has been permitted to change his bid by omitting various items and thus reducing the aggregate cost to the amount realized from the sale of bonds, is a contract made without notice or competition and is illegal and void under Section 3988.

3. Failure of the auditor or clerk to first certify that the money necessary to meet the obligations assumed under such a contract is in the treasury to the credit of the fund from which it is to be drawn, or has been levied and is in process of collection and has not been appropriated for any other purpose, renders the contract void under Section 2702 (1536-205).

4. When a proposition for a bond issue for the erection or equipment of a school house has been submitted by the board of education to the voters of the district three different times and each time it has been voted down, further submission of the proposition may be enjoined as an abuse of discretion and authority on the part of the board.

5. Public funds paid out on a contract, completed in good faith and free from fraud and collusion, can not be recovered back at the instance of a tax-payer, notwithstanding the contract was illegal and void.

CAMERON, J.

This is an action brought by the plaintiffs, who are property owners and tax-payers in the village school district of Haviland, Paulding county, Ohio, to enjoin the board of education of said school district from calling any other or further elections therein for the purpose of issuing any more or other bonds of said district, for the purpose of either finishing the school house building or placing therein any heating plant or other thing.

A mandatory injunction is also asked for, requiring said board to institute suit to recover from the contractor who built said school house the money paid to him by said board therefor, and for all the money necessary to complete said building as contracted for; for a finding of the amount of money illegally paid out by said board on account of, or in connection with, said school building, and for a judgment against said board, the members thereof, and the contractor for the amount so found; also for a mandatory injunction requiring said board and the members thereof to complete the proposed building ac-

cording to the proposal made by them to the voters of said district; and for general equitable relief.

The original petition in the case was filed in this court December 6, 1905. On January 18, 1906, a general demurrer was filed to this petition. This demurrer was sustained, and, on July 6, 1906, the plaintiffs filed an amended and supplemental petition herein. On August 13, 1906, a general demurrer was filed to this amended and supplemental petition, which was overruled.

Afterwards the defendants (except Baltes) answered as individuals, and as a board. This answer, after several admissions, contains a general denial. Then follows an allegation that the school building had been fully completed, said contract fully performed and executed and the contract price paid long before the said amended and supplemental petition was filed in this case. It is also averred that the proposition of issuing bonds of said district, in the several amounts named in the petition, was made in good faith and after having first determined by proper resolution of the board that it was necessary to issue the bonds of the district for said purpose.

To this answer no reply has been filed. The case has been heard upon the evidence, ably argued, and submitted to the court.

The necessity for the building was declared in a resolution of the board, passed April 10, 1905, and fixing the time for holding the election on May 1, 1905. The result of the election was in favor of issuing the bonds.

On June 14, 1905, the bid for these bonds of the New National Bank, of Columbus, Ohio, in the sum of $8,150, and accrued interest, was accepted by the board, and afterwards, on July 21, 1905, said bonds were ordered to be signed. The bonds were signed and delivered to the purchaser. There is no question but what the money was received for these bonds by the board of education.

After the bonds had been sold, the board (July 21, 1905) directed the clerk to cause notice to be published authorizing the letting of a contract for the erection and completing of a certain school house in said school district, according to plans and specifications prepared by the architect, J. I. Hale, which notice

was published in the Paulding *Republican* and Paulding *Democrat,* two newspapers of general circulation in said school district.    Under this notice, bids were to be received up to 12 o'clock M., of Friday, August 25, 1905.

On August 25, 1905, at 12 o'clock, the board met for the purpose of opening and considering the bids.    Four sealed bids had been received, viz.:   Richard Allingham, $8,853.50; Dutweiler & Silders, $9,196.31; W. M. Christman, $9,366; Jacob Baltes, $9,655.

When these bids were opened it was found that each one exceeded the amount of the proceeds realized from the sale of the bonds, the lowest being more than $600 above the appropriation. Thereupon, as it appears from the record of the board, an adjournment was taken until 3:30 P. M. of said day to "allow bidders to refigure their bids."

At this adjourned session, the record shows that Dutweiler & Silders and Jacob Baltes presented a bid for the construction of the new school house for the sum of $8,797.    This amount still exceeding the appropriation, certain changes and deductions were made, which are specifically set out in the record, and which in the aggregate amount to $557.    No one was present when these changes and deductions were made, except the members of the board, architect Baltes, and Dutweiler, the other two bidders being absent.    There were no defects apparent on the face of any of the bids.

It will be seen that, after deducting the amount allowed for these changes from the last bid of Baltes and Dutweiler & Silders (who seem to have united their bids) it just equaled the amount of money realized from the sale of the bonds, including premium and accrued interest, viz., $8,240.    Thereupon the contract was awarded to Baltes, and afterwards on August 31 the contract was signed.

The heating plant mentioned in the resolution of the board, and in the proposition submitted to electors of the district, was not provided for or covered by this contract.    The legality of this contract is challenged, principally, upon these grounds:

First.    Want of authority in the board to make it.

Second. Illegality of bid under which contract was awarded and entered into.

Third. Because illegal and void, under the provisions of Section 2834*b*, Revised Statutes.

It was well said by counsel, in the statement of the case, that novel and interesting questions were involved. After a careful examination of the case, the statutes and authorities cited, I agree with counsel in the statement made.

1. Want of authority in board to make contract.

So far as applicable, Section 3991, Revised Statutes, provides:

"When the board of education of any school district determines that it is necessary for the proper accommodation of the schools of such district * * * to erect a school house * . * * or when it becomes known to the board of education, that the money provided for * * * the erection of a school house * * * is not sufficient therefor, and such board ascertains that * *. * the erection and furnishing of such school house * * * for which a sufficient sum of money has not been provided, will require a greater tax upon the property of such district than the board is authorized by this title to levy, and that to provide means therefor it will be necessary to issue bonds, it shall make an estimate of the probable amount of money required for such purposes, * * * and at a general election, or special election called for that purpose, shall submit to the electors of the district the question of levying taxes for such purposes," etc.

The section then provides that ten days notice shall be given. etc., of said election. It will be seen, "that board shall make an estimate of the probable amount of money needed for the purpose," etc.

The statute does not require that the board must know, in advance, the exact amount of money that will be required. This would, in many cases, be impossible to ascertain. I have no doubt that the members of this board of education honestly believed that $8,000 would build and finish this school building, and equip it with a modern heating plant. In the light of subsequent events, it is now apparent they were mistaken. It was an error of judgment in estimating the probable costs of the proposed improvements. I do not and can not believe that

this error or mistake in estimating the costs of this improvement (when honestly made), so misled, or prejudiced the electors of this school district, or so limited and circumscribed the authority of the board as to make and render null and void the contract with the board, in good faith subsequently made and entered into.

2. Illegality of bid under which contract was awarded and entered into by the board.

It is said in argument that the bids of Allingham and Christian were unlawful for that they, or either of them, did not comply with, nor conform to, the requirements. There is no evidence before the court upon this subject. However that may be, the bids of Baltes and Dutweiler & Silders, as far as appears, were regular and complied with all the requirements of the board. After the bids were all opened and examined and the board had adjourned, as we have shown, the original bid of Baltes, not because of any defect or mistake apparent upon the face of the bid, was scaled down, various items omitted, parts of building left unfinished, so that his original bid of $9,655 was so modified and changed that the price finally arrived at by this method, exactly equaled the amount realized from the sale of the bonds. The bid which was accepted, and upon which the contract was awarded, was an entirely different bid from the one originally made. It was a bid made without notice and without compensation—a bid changed, altered, and modified to meet the appropriation.

It seems to me that this was and is in direct violation of Section 3988, Revised Statutes, and adjudged cases.

In *McGreevey* v. *Toledo*, 20 C. C., 114, the circuit court say, in syllabus and in the body of the opinion:

"1. A contract between the board of education and the lowest bidder for an excavation for a school house, based upon a bid which the contractor was allowed to amend and increase, on account of an alleged mistake which did not appear on the face of the original bid is void under Section 3988, Revised Statutes, providing the manner in which such contracts shall be awarded, although the bid as amended was still the lowest bid received.

"2. Such contract being void; there can be no recovery

thereon, or for the value of the work and labor performed thereunder.

"After examining the authorities and considering the question, we are of the opinion that the board did not have such authority in this case. As we understand the rule, to permit the amendment of a bid that has been opened and after the bidder has seen the other bids, to permit an amendment then, on account of a mistake, it must be a mistake that appears on the face of the bid. There is no mistake appearing on the face of this bid; it is just a plain bid to do work for $1,215, without reciting any calculations, but just the mere words: 'Excavation, $1,215.'

"Being of the opinion that this bid could not be amended, is the plaintiff then entitled to recover what the work is reasonably worth? It is claimed by the plaintiff in error that although the board had no right to permit him to amend his bid, the contract having been executed and the work having been performed, he ought to be paid therefor. To hold otherwise, it is urged, would result in hardship to this plaintiff. The rule is well settled that a municipal corporation or a board thereof has such powers and such powers only as are conferred upon such corporation or such board, by law. If a board or corporation is authorized to make a contract for building, or for any other purpose and is required to conform to certain things before making such a contract, in order to make such a contract those things designated by the law of the state must be complied with, and such conditions are strictly construed in favor of the tax-payers of a municipal corporation and against the right of such corporation or such board to make such a contract. Those who deal with boards and with municipal corporations are supposed to know what powers they have in the way of making contracts."

The Supreme Court, in Beaver v. Institution for Blind, 19 Ohio St., 97, held:

"In such cases, after the day limited for the filing of such proposals, and after the same have been opened, the trustees are invested with no discretion to permit an amendment or alteration of any such proposal on account of any alleged mistake therein, unless the fact of such mistake and the requisite data for correcting the same are apparent on the face of the proposals."

The same principle is held in State v. Abbot, 2 C. C.—N. S., 281; Akron v. France, 4 C. C.—N. S., 496.

From the foregoing authorities and others that might be cited, I am of the opinion, and so hold, that this bid was not authorized, and was illegal.

3.   Is the contract illegal and void under the provisions of Section 2434*b*, Revised Statutes?

This section provides:

"The commissioners of any county, the trustees of any township and the board of education of any school district, except in cities of the first class, of first, second and third grade, shall enter into no contract, agreement, or obligation involving the expenditure of money, nor shall any resolution or order for the appropriation or expenditure of money be passed by any board of county commissioners, township trustees or board of education, except in cities of the first class, of first, second and third grade, unless the auditor or the clerk thereof shall first certify that the money required for the payment of such obligation or appropriation is in the treasury to the credit of the fund from which it is to be drawn, or has been levied and placed on the duplicate, and in process of collection and not appropriated for any other purpose; which certificate shall be filed and immediately recorded; and the sums so certified shall not thereafter be considered unappropriated until the county, township or board of education, except in cities of the first class, of first, second or third grade, is fully discharged from the contract, agreement or obligation, or so long as the order or resolution is in force, and all contracts, agreements or obligations, and all orders or resolutions entered into or passed contrary to the provisions of this section, shall be void. Provided, that none of the provisions of this section shall apply to the contracts authorized to be made by other provisions of law for the employment of teachers, officers, and other school employes of boards of education."

It will be seen that this statute, in express terms, declares that "all contracts, agreements or obligations, and all orders or resolutions entered into or passed contrary to the provisions of this section, shall be void," unless the auditor or clerk shall first certify that the money required for the payment of such obligation or appropriation is in the treasury to the credit of the fund from which it is to be drawn, etc. It is conceded that the certificate was never made.

In *Lancaster* v. *Miller*, 58 Ohio St., 558, the Supreme Court say: .

"Nor will such contracts impose on the corporation a valid obligation, even if bids were advertised for pursuant to Section 2303, unless the auditor, or clerk, of the corporation, as the case may be, 'shall first certify that the money required for' that purpose 'is in the treasury to the credit of the fund from which it is to be drawn,' etc., as required by Section 2702, Revised Statutes."

Original Section 2702 (1536-205), Revised Statutes, is almost identical with Section 2834b, and if the certificate mentioned is essential in the one it is also in the other.

On page 575, *Lancaster* v. *Miller, supra,* the court, in its opinion, says:

"Contracts made in violation of these statutes should be held to impose no corporate liability. Persons who deal with municipal bodies for their own profit should be required at their peril to take notice of limitations upon the powers of those bodies which these statutes impose."

In *Buchanan Bridge Co.* v. *Campbell*, 60 Ohio St., 406, the Supreme Court held:

"A contract made by county commissioners for the purchase and erection of a bridge, in violation or disregard of the statutes on that subject is void, and no recovery can be had against the county for the value of the bridge. Courts will leave the parties to such unlawful transaction where they have placed themselves, and will refuse to grant relief to either party." *Richter* v. *Building & Loan Co.,* 7 C. C.—N. S., 360.

From the foregoing authorities, the court holds that the contract made by the board of education of Haviland school district and Jacob Baltes, was illegal and void, because repugnant to, and in violation of, Section 2834b, Revised Statutes.

The next question for determination is the injunction or restraining order allowed by the probate judge of Paulding county, enjoining the defendant board from resubmitting the question of issuing bonds to equip this school building with a modern heating plant.

The rule is well settled that courts will not ordinarily undertake, by injunction or otherwise, to control the discretion of boards or other inferior tribunals. It is only where there is an abuse of discretion that courts will interfere.

The circuit court of the first circuit, in case of *Pugh Prtg. Co.* v. *Yeatman,* 22 C. C., 584, held:

"1. The presumption is that public officers—in this case the deputy state supervisors of election—have exercised a sound discretion, and the burden of proof is on the plaintiff to show, with that clearness which is always necessary to move a court of equity to interfere, a state of facts which would constitute an abuse of discretion.

"2. The courts can not control public officers in the exercise of their discretion. It is only when the courts find present some of the equitable grounds of fraud or mistake, or find the decision or award to be wrongful, fraudulent, collusive or arbitrary, that they can set aside or restrain their conclusions or determinations."

Judge Price, late of our circuit court, and now a member of the Supreme Court, in the case of *Watkins* v. *Hall,* 13 C. C., 253, held:

"It is very clear that so far are the control and management of the school interests—the selection of the site, and erection and equipment of buildings—committed to the judgment and discretion of the board of education, that a court can not interfere with the exercise of such judgment and discretion, except where it is abused or overreached, or where the conduct or action of the board proceeds from fraudulent motives, or improper purposes, which would be the same thing in law as a gross abuse of discretion."

In the case now under consideration, the board submitted the question of issuing bonds to pay for the heating plant for this school building three different times: Frst, bonds in the amount of $1,300; second, in the sum of $1,500; third, in the sum of $1,550, which propositions were voted down by the electors of the district, each time by an increased majority. The question was about to be submitted the fourth time when the board was enjoined.

While I can not and do not find from the evidence that the members of this board acted dishonestly, corruptly, or fraudulently, in any manner or thing connected with any of the various transactions growing out of or touching these improvements, contract, bids, bonds, or submissions, yet we hold that the further submission of the question of issuing bonds to install this heating plant, thereby subjecting the electors of said district to further annoyance, inconvenience, loss of time, and expense, would be an unwarranted and unauthorized exercise and abuse of the authority and discretion of the board.

It is therefore the order and judgment of the court, that the temporary injunction heretofore allowed, restraining said defendant, the board of education of the Haviland village school district, from calling any other or further elections for the purpose of issuing any bonds of the said district for the purpose of placing in said school house any heating plant, be and the same is made perpetual.

While the court finds that the contract for the building and construction of said school house was illegal and void, yet the court further finds that said contract has been fully executed, and the building built, completed and paid for, in good faith, free from fraud or collusion on the part of said board, the members thereof, or the contractor.

It is therefore the further order and judgment of the court that the mandatory injunctions prayed for, should be and are refused, as is also the prayer for a finding of the amount of money claimed to be illegally paid out by said board of education on account of said proposed school building; and judgment therefor.