ETHEL OSTRANDER, by WILLIAM OSTRANDER, Her Guardian
ad Litem, Respondent, *v.* ARMOUR & COMPANY, Appellant.

Second Department, December 8, 1916.

Master and servant — negligence — motor vehicles — injury to infant
by falling from running board of truck — duty of chauffeur to search
for infantile trespassers — evidence — when relation of master and
servant does not exist — use of truck by chauffeur for private business
of another employee.

An automobile is a legitimate vehicle on the street and entitled to stop
without having children climb upon it.

Although it is not the usual duty of a chauffeur of a truck to search for
infantile trespassers on the far side of his car, if he does see such a tres-
passer he should allow time for her to get off before starting the car.

In an action by an infant to recover damages for personal injuries alleged
to have resulted from the negligence of the defendant's chauffeur in
starting the car while she was on the running board, it was error to per-
mit the plaintiff to answer the question, " what would he do with you chil-
dren" at other times within two weeks, and to state that the chauffeur
got on the truck without saying anything to the plaintiff and the
children.

Where a corporation by failing to object consents to its chauffeur taking
a truck to convey articles to the homes of other employees, and in effect
lends the truck for such purpose, it is not liable for the negligence of the
chauffeur while so using the truck, as he was not acting in the course
of his employment.

APPEAL by the defendant, Armour & Company, from a judg-
ment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of Dutchess on the 19th
day of February, 1916, upon the verdict of a jury for $1,500,
and also from an order entered in said clerk's office on the
31st day of January, 1916, denying defendant's motion for a
new trial made upon the minutes.

*Floyd K. Diefendorf* [*Alfred W. Andrews* with him on the
brief], for the appellant.

*Morschauser & Mack,* for the respondent.

THOMAS, J.:

Defendant's servants, with the knowledge and acquiescence
of the person in immediate superintendence, from time to
time used, for articles purchased by them, the refrigerator

in Poughkeepsie where defendant dealt in meats, and on the day in question Love, an employee, took from the refrigerator a barrel of apples that had been there several months, and asked Kipp, the chauffeur of a truck that had been put up at the end of its work for the day, to carry it to Love's house. Kipp did so, and coming out of Love's house found several children playing about and on the truck. He told them to get off, looked around to see that they had done so, and hearing the call that they all were off, started up his car, whereupon the plaintiff, who was on the running board on the left side and towards the street, fell off and was injured. The court charged: "It was the duty of this driver to look out for the children around his truck at the time he was about to start it, and he owed to all of those children the degree of care that a reasonably prudent man would exercise under the circumstances." The plaintiff was on the off side, away from the side where the chauffeur entered the car and where he sat, and unless he looked with some particularity he might well miss seeing her down on the running board. It is a care of serious moment imposed upon the busy teamster to make a search around his car lest a child too young for discretion and undirected by parents has tucked herself away in an obscure place beyond the casual and convenient notice of the driver. The driver, by such rule, in responsibility supersedes guardians and other custodians in watchfulness of the children on each block where his business requires him to stop. An automobile is a legitimate vehicle on the street, and entitled to stop without accumulating children upon it. I am not convinced that it is the usual duty of a chauffeur to search for infantile trespassers ensconced on the far side of his car. In this case it seems that the children in that neighborhood were accustomed to play around the running board of the car, and when the man would come out they would get off. It seemed to the driver that the circumstances required him to look on both sides of the car, and he says that he did so before starting, and another witness so testified. But there is evidence that when he looked the girl was on the left side. If he looked around the car and did see the girl, he should have given her time to get off and should have waited until she did get off. Farther than that,

I see no grounds for suggesting that he was wanting in care. I think that it was error to permit the plaintiff to answer the question, "what would he do with you children" at other times within two weeks, and that he got in the car without saying anything to the plaintiff and the children. Assuming that he was in charge of the truck on such occasions, the limit of evidence was that the children made free with it, and not that he started up without saying anything, although a plaintiff's witness in another place said that they got off at his coming. But an important question is whether, at the time, he was in the course of his employment. The fact is clear enough that defendant's men made use of its refrigerator, and that the truckmen helped them home with heavy articles. Such errands had no proper connection with defendant's business, but grew out of *camaraderie* amongst the men. The right to do it was not expressed or implied in the contract of employment or in the nature of it. It was a liberty the men took to help each other, and the superintendent, knowing of it, was silent. What was the real thing done? The chauffeurs, without asking or express leave, borrowed the car to do a favor for their associates. The failure to object was a consent, a lending of the car to the two men for the private business of one of them. There was nothing in that which indicated that the driver as defendant's servant was driving the car, and that he was doing so in defendant's business or within the scope of the employment of either man. The question comes to this: If the master lends a servant a car, must the master respond for the prudent use of it? I discover nothing in the act that indicates a continuance of the relation of master and servant. It is a common happening that the master lends his servant his horse or his car for the latter's private use — not because the master is bound to do it, or that it is a perquisite of the servant. It is a mere disposition to oblige that the relation prompts. If a farmer should lend his hired man a team, or the latter should take it when he wanted it to plow his garden or to move his personal effects, it would not be thought that the man continued to be the servant in his conduct of the team. The principle does not change by the substitution of an automobile

for horse and wagon. A master should not, for accommodating his servants, be burdened beyond his obligation if he loans his property to a neighbor.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., STAPLETON, MILLS and RICH, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.