EDWARD FRANCIS O'NEIL v. WILLIAM L. COCHRANE.[1]

October 30, 1931.

No. 28,548.

[1]Reported in 238 N. W. 632.

*Alphonse A. Tenner,* for appellant.
*Briggs, Weyl & Briggs,* for respondent.

LORING, J.

In an automobile accident case the court dismissed plaintiff's case at the close of his testimony, and he appeals from the judgment entered after the denial of his motion for new trial.

The sole question raised is whether there was any evidence of negligence on the part of the driver of defendant's delivery truck which on August 13, 1929, was involved in the accident in which plaintiff's two-year old child suffered personal injuries.

About 10:30 in the forenoon of that day defendant's driver, aged 21 years, was delivering groceries to plaintiff's house. He stopped his truck in the paved alley behind the house, took his groceries into plaintiff's back door, conversed a minute or two with Mrs. O'Neil, returned to the rear of his truck, and opened one of the doors to put back into the car the box or basket which had been used to deliver the groceries. He then passed along the left side of the truck to the cab and got in, started the motor and started to drive away. As he approached the car from O'Neil's house, its left side was toward him and he saw no one near the truck or in the alley. He saw no one when he walked along the left side of the car or after he got into the driver's seat. He is positive that if plaintiff's child had been in front of the truck before it started he would have seen her. He did not look along the right side of the car to see if it was clear. The first he knew of the child's presence was when he had moved his truck in the low gear about a car-length. He then heard a child's cry and stopped his truck within three feet. He went around to the back and found the child bruised and bleeding about three or four feet back of the right side of the truck. He immediately carried her in his arms to her mother. The tricycle which the child had evidently been riding was crushed in such a

way as to indicate that it had been run over by the truck, probably by one wheel. It lay about four feet farther toward the forward end of the truck than the child did. The testimony shows that the child, on account of her size, did· not ride the small tricycle in the usual way but pushed it with one foot on the rear axle. The other foot was used to step on the ground or sidewalk and thus propel the vehicle. In this position her body would be somewhat more to the rear of the vehicle than if she were in the normal riding position. The driver had never seen the child with her tricycle in the alley, although he had seen her with it on the front walk on previous days. He did not see her at all that morning outside the house until after she was hurt; nor had he ever seen children playing in the alley. They sometimes stood near some of the garages.

There were no eyewitnesses to the accident, and plaintiff relied on the foregoing facts brought out from the driver and upon certain statements made by him when he took the child to its mother. She says he said: "I didn't see your little girl in time to stop, and I ran over her," and that he had "picked her up from underneath the back end of the truck." After the driver had taken the child and its mother to the doctor, the plaintiff testified that the driver said to him that he "didn't see her in time to stop" and that he was sorry that he hit her.

Plaintiff relies upon these statements as implying that the child was in front of the truck before it started and was seen by the driver in time for him to have avoided hitting her. We can spell out no such implication or any implication inconsistent with the ordinary care which he was bound to use under the circumstances. Having seen no one around the truck or in the alley as he returned from plaintiff's house, we do not think that ordinary prudence required him to investigate the right side of his vehicle farther than he did from the seat at the wheel. In our opinion the trial court properly dismissed the action.

Judgment affirmed.