Viola Williams and Val Percy Patillo, Petitioners,

*v.*

Samuel Jordan, Administrator of the Estate of Anthony Jordan, Deceased, Respondent.

(*Nashville,* December Term, 1960.)

Opinion filed May 5, 1961.

William H. Woods, Goodpasture, Carpenter, Dale & Woods, Nashville, for petitioners.

Jack Norman, Jr., Nashville, for respondent.

Mr. Justice Swepston delivered the opinion of the Court.

Samuel Jordan as administrator of the estate of Anthony Jordan, deceased, recovered a verdict and judgment in the Circuit Court in the amount of $15,000 against the above named petitioners and the same was affirmed by the Court of Appeals. We granted certiorari.

There are several assignments of error but in the view we take of the case it will not be necessary to mention any others than the first assignment, which complains that the Court of Appeals erred in affirming the trial court in overruling the defendants' motion for a directed verdict made at the conclusion of the plaintiffs' proof and renewed at the close of all the proof. The evidence is uncontradicted in any material aspects and may be summarized as follows:

The accident in question occurred on June 19, 1959, at about 7:00 p.m. on a clear day when it was still daylight. The deceased was a 13-months old boy who was able to walk to the extent that he could get about without assistance. His parents and 6 of the other children, the oldest of which was 8 years old, resided at 921 24th Ave.

N. in Nashville, Tennessee. That street is about 30 feet wide, paved with asphalt to the property line on each side, but there are no sidewalks. Immediately inside the property line, however, is a strip 5′ 8″ wide in front of the walk leading from the front steps toward the street which is covered with some gravel and is a sort of mixture of gravel, dirt and grass, on which automobiles are customarily parked on that side of the street R. pp. 39 and 58. The distance from the house (not the front steps) to the graveled area in front of the yard is 21′ 8″, and from the foot of the front steps is 16′ This walk leading from the front steps is composed of stepping stones rectangular in shape and consisting of 2 parallel rows and extends to the edge of the gravelled area.

This residence is on the west side of 24th Avenue and corners on that avenue with Marina Street to the south; the distance from Marina Street to the north edge of this walk is 48′; the record is not clear as to the length of the frontage of this lot on 24th Avenue, but the record reflects that about 90 feet to the north from this gravelled parking area there is some sort of playground with swings where the other children in this and other families in the area were playing at the time of this accident.

The respondent Patillo driving the automobile belonging to his aunt, the respondent Viola Williams, came from the north, drove on to this little parking strip or largely on same with possibly his left wheels on the edge of the pavement, stopped his car just about in line with this stepping stone front walk and went across the street to see a boy friend of his who lived in a residence on that side of the street. At that time he observed the children playing down to the northwest of the residence on the

playground (the mother says they were there) and, although the mother and child were on the porch with the child sitting on the top step, Patillo testified that he did not observe them. He returned to his car in about 5 minutes, coming up to the car at an angle slightly toward the rear, got in on the lefthand or driver's side, started his motor and drove off. He later was informed of the tragedy and stated that as he drove away he felt a bump under his right rear wheel but he thought he had passed over a stepping stone that was lying out in the gravel.

While Patillo was visiting across the street, the child's mother, according to her testimony called down to her children at the playground to bring up the child's playpen and then she went into the back of the house to obtain a ball for the child to play with, leaving the child sitting on the steps. She was gone, according to her estimate, 2 or 3 minutes and was returning to the front of the house when she looked out and saw this car drive away, heard some child cry out, and ran out and discovered that her little boy was on the ground on his all fours on the grass 5 or 6 feet from the road or street and about 10 feet south of the line of the stepping stones and that he was obviously injured. The lad across the street took her and the child to Vanderbilt Hospital but the child was dead upon arrival.

 While it is true that no witness actually saw the car run over or strike the child, yet the circumstances point indisputably to the fact that the child in some manner was fatally injured by this particular automobile and no insistence to the contrary is now made by the petitioners. The determinative question is, however, whether or not there is any evidence, direct or circumstantial, from which it may be inferred that the driver of the automobile

was guilty of negligence. There is not one iota of evidence as to where this child was located, whether sitting, standing or lying down, so as to show that he could have been seen by Patillo as he approached the automobile from the left side. The declaration, of course, alleges that "plaintiff's minor son was at that time playing some few feet in front of the right front wheel of the automobile belonging to the defendant", but there is absolutely no proof to that effect. Patillo testified that he did not see the child and that he could not have seen him, had no reason to suspect that the child was anyways near the car and that he did not go around to the front or the right side or look under the automobile before resuming his seat at the wheel. The mother of the child testified that she saw Patillo drive up and park and had seen him drive up and park in front of her house previous to the accident; and Patillo testified that when he drove up, he did not notice the mother and child on the porch. The fact that Patillo admitted that he heard a bump and thought his rear wheel had run over something probably the stepping stone, has absolutely no probative value to show negligence, because he was already either guilty of negligence or he was not guilty of any. If Patillo had seen the mother and child on the porch, he had a right to assume the child was in no danger and was being cared for. The child who hollered was never identified and the record does not show what distance the child was from the car when she hollered.

■ There is accordingly, in our opinion, no basis on which this case should have been submitted to the jury, unless under the circumstances of this case the operator of this motor vehicle in the exercise of ordinary care should have looked under and all around the automobile

before getting in and taking off. It seems that merely to state the question is to give the answer that ordinary care would make no such requirement. No case has been cited to that effect and the rule otherwise is practically universal.

No similar case has been found in Tennessee. Counsel for petitioners has cited a large number of cases from other jurisdictions which involve analogous situations. In *Williams v. Cohn*, 1926, 201 Iowa 1121, 206 N.W. 823, the court specifically held on similar facts that no negligence is shown when there is no evidence that the driver could have seen the child in the exercise of ordinary care; and that there was no duty to look around and under the truck. The facts of that case are as follows. In broad daylight a grocery delivery truck was driven into the driveway alongside the residence of plaintiff's intestate and was parked about even with the kitchen. The mother and three children ages 6, 4 and 1½ years, the last being the deceased, were sitting on the front porch in full view of the driver of the truck and were seen by him. The mother left the children on the porch and went to the kitchen to receive the groceries, which consumed about 2 minutes; the accident occurred while she was in the kitchen. It was shown that in the meantime the two older children went inside the house and the deceased went off the porch to the rear of the truck and then to the front in a position by the front wheel where the driver could not see him on his way back to his truck. As he backed up he ran over the child.

The opinion points out clearly the difference between the mere fact that a child or children are in the vicinity and the *important fact* that they are in a *position of close proximity* to the truck or are otherwise in a *situation of*

*danger* that requires the operator of a vehicle to exercise care commensurate with that potential danger. This is the basic error in the dissenting opinion which will be dealt with hereinafter.

The following quotation sums up the case quite well:

"A driver * * * is under no legal obligation to make a search around and under his car 'lest a child too young for discretion and undirected by parents had tucked herself away in an obscure place, beyond the casual and convenient notice of the driver.'" 206 N.W. at page 825.

"Verdicts cannot rest on conjecture or surmise. With no evidence to the contrary as to the locus of the decedent immediately prior to its injury, and under the applicable rule of law, we hold that plaintiff has failed to sustain the pleaded negligence * *."

"* * * The testimony of the plaintiff does not establish that the point where the child was picked up was the location of the child when the truck started to leave the Nicholson premises. It is nothing more than an hypothesis which attempts to explain a situation. Under the undisputed testimony of the eye witnesses as to the position of the child, it is as reasonable to say that the child was dragged the short distance the car moved after it started." 206 N.W. at page 826.

"It is one thing to have a state of facts from which conclusions may reasonably be drawn; quite another, to hold that one who has the burden of proving a given conclusion has discharged the burden by showing that a theory which sustains him is a possible one, if it also

appear that a theory upon which his adversary would not be liable is just as possible."

A somewhat similar case is *Brown v. Liberty Mutual Ins. Co.,* 1958, 234 La. 860, 101 So.2d 696, in which it appeared that a motorist parked the vehicle in a driveway of the plaintiff where there were 3 children in close proximity to the automobile and the motorist, in starting his vehicle, had no reason to foresee that any one of the 3 children, *who were presumably being watched over by the parent,* would be permitted to stray unnoticed from a place of safety on the lawn to a position immediately under the right front end of the automobile.

In *Owens v. Holmes,* 1953, 199 Or. 332, 261 P.2d 383, a mail carrier, although he knew that children had prior to this occasion been about and near this mail box, started off in his usual manner when seeing no one about but later he discovered that he had struck a 3-year old child who was under the right side of the car. *Held,* he was not guilty of negligence where no children were at or near the mail box when he started.

A similar case is *McNeill v. Bullock,* 1959, 249 N.C. 416, 106 S.E.2d 509.

In addition to the numerous cases cited in the opinion of the first above mentioned case, the brief cites the following authorities also which lay down the same rule:

*O'Neil v. Cochrane,* 184 Minn. 354, 238 N.W. 632; *Ostrander v. Armour & Co.,* 176 App.Div. 152, 161 N.Y.S. 961; *White v. Edwards Chevrolet Co.,* 186 Va. 669, 43 S.E.2d 870; *Coffey v. Oscar Mayer & Co.,* 252 Wis. 473, 32 N.W.2d 235, cases reported in 3 A.L.R.2d 753, Blashfield Auto Law and Practice, Vol. 2A, Sec. 1509, citing

*Wilson v. City of Long Beach,* 71 Cal. App.2d 235, 162 P. 2d 658, 163 P.2d 501.

■ Finally, it is well to recall the rule that negligence cannot be inferred from the mere fact of the occurrence of the injury alone. In *Nichols v. Smith,* 21 Tenn.App. 478, 111 S.W.2d 911, an admission by the driver of a motor vehicle that he did not see the deceased until the latter was on the hood of the vehicle was not evidence that he was not maintaining a proper lookout, in the absence of any evidence that deceased appeared in front of the truck at a distance and in such a position that he could have been seen by the driver. *Held,* the judgment for the plaintiff was reversed and the suit dismissed.

Accordingly, we think the two lower courts erred and that a verdict should have been directed in favor of the defendant in the trial court.

Reversed and suit dismissed.

BURNETT and FELTS, JJ., dissent.

### Amendment to Majority Opinion.

SWEPSTON, JUSTICE.

Now as to the dissenting opinion prepared by Mr. Justice Felts, the following observations of fact and law are in order:

1. His first proposition of fact is that defendant parked in the yard.

That is true, but it has no probative value on the question of negligence for two reasons: (1) the mother herself admitted R. 39 and 58 that he parked where her family and all others had been parking on the gravelled area in front of the stepping stones and 5 or 6 feet from the edge

of the street pavement; (2) under all the cases cited in both the majority and minority opinions, it matters not whether the vehicle is on the property driveway or in the street, because the question of negligence depends upon the *proximity* of the child or children *to the vehicle* and *whether the driver ought to be put on notice thereby of a real probability of harm, and not a mere theoretical possibility.*

2. The mere fact that children were playing in the yard is insufficient in law, as just stated, supra, and as shown by a proper analysis of the facts in all of the cases. In the present case the record does not show anything other than that the other children were playing on swings, etc., 84 to 90 feet R. 11 northwest of defendants' vehicle, which makes the distance about one fourth of the length of the average city block; that they were taking no interest in the vehicle; that the infant was under the care of its mother and sitting on the top step of high front steps. If he had seen them, he had a right to assume the mother would not go off and leave the child.

3. Of course, he drove off without looking. Under the just recited situation who would ever have thought of walking around the vehicle and looking under it?

4. The record does not show that any child except the baby was near the vehicle when defendant reentered it. It only shows that this other unidentified child was seen pointing when the mother heard the scream and looked out the window R. 44, 48, 65. That child could *have been any distance away up the yard.*

Now, as to the cases, *no fault can be found with any cases cited* in the dissenting opinion, because the evidence in each made a jury question. But in *not a single* case

are the facts *analogous* to *undisputed* facts of the *instant* case.

In the first case, *Stein v. Palisi,* 308 N.Y. 293, 125 N.E. 2d 575, the location of the accident was a fifteen foot wide private dead end access road surfaced with cinders and rough stones. Toward the dead end were four small bungalows on the ''left side'' with lawns fifteen to twenty feet wide, or a total of 60 feet.

The first was occupied by the Steins. Their 19-month old baby, the injured party, with a 3-year old sister and other children were playing on the lawn in front of bungalow No. 2 when a taxicab was driven into this narrow road at a rapid rate of speed past the children up to the third or fourth bungalow, where it pulled on to the lawn, discharged its passengers, drove rapidly back and in some way struck this baby either on the edge of the grass or in the street.

This was an obvious case of *fast and reckless driving* in *immediate proximity* to children; the opinion *so characterizes it.*

The second case, in *Tupman's Adm'r v. Schmidt,* 200 Ky. 88, 254 S.W. 199, is certainly not in point either. This truck driver saw this 6-year old child behind his truck— a *place of danger and unattended*—before he entered his cab to leave. He put the child on the sidewalk and told him to stay there. Then having entered the cab it took 4 or 5 attempts to start the motor. Then he stepped to the sidewalk, looked back, saw some other children playing a short distance away but did not see the deceased among them or elsewhere; he did not say, however, that he went back to the rear of the truck to look. He backed over the child. Of course, that was a jury question.

*Cunningham v. Sublett's Adm'r*, 306 Ky. 701, 208 S.W. 2d 509. This is another case where these children came around the gasoline truck unattended and a place of danger. It follows Tupman's, supra. The driver after knowing this 16-months old boy and his 5-year old sister had been right at the truck, assumed the boy was 20 feet away from the truck when he started forward, but the child was really in front and was killed.

*Lovel v. Squirt Bottling Co.*, 234 Minn. 333, 48 N.W.2d 525, 530. This case brings out the very point of distinction between that line of cases on the facts and the instant case like *Williams v. Cohn* cited in the majority opinion.

There the driver accustomed to making deliveries to this store, in which the family lived, knew these children usually played on the driveway and about the truck and on this occasion they were doing so. In fact, he had ridden the 5-year old boy on the pushcart before hanging it back on the front of the truck. He was aware that the 16-months old girl, who was run over, had been playing right at the front of the truck and when he moved forward about a foot she was still there and was run over.

The opinion has this to say in distinguishing the facts of the case from the earlier Minnesota case of *O'Neil v. Cochrane*, supra, and *Williams v. Cohn*, supra:

"In each of the cited cases, the court noted that the truck driver had *not seen the injured child* in the *vicinity* prior to the accident, and hence was not under obligation to exercise a higher degree of care commensurate with such knowledge. In each case, the evidence disclosed that the driver had discharged his applicable duty of exercising ordinary care. In the present case,

\* \* \*, if the jury determined that Aldridge knew of the presence of Janis *near the truck* shortly prior to the accident,'' (it became a jury question of negligence.)

Now, if reference will be made back to the facts of *Williams v. Cohn,* supra, it will be seen that the driver *had seen the children* on the front porch with their mother, and the driveway obviously ran alongside the residence, but he had not seen them in the ''near vicinity'' of the truck.

That is exactly what the opinion means in the case under discussion, because (1) those are the facts in it and (2) it uses exactly the phrase ''near vicinity'' on page 529 of 48 N.W.2d.

Then in the case of *Coca Cola Bottling Co. of Black Hills v. Hubbard,* 8 Cir., 203 F.2d 859, where the truck driver drove up and parked in front of the store in the midst of 5 or 6 children playing there where he had seen them doing so on prior occasions. That opinion quotes and adopts the distinction made in *Lovel v. Squirt Bottling Co.,* immediately supra, and on page 863 syb. (9) of 203 F.2d states:

''\* \* \* *parks* \* \* \**in the midst of, or close proximity.*''

Finally, the statement in the dissenting opinion, that some of the older cases *broadly* state the rule that no duty rests upon a driver to look around and under the vehicle before starting, is *not correct.*

The rule is and has all along been the same, as shown by the cases cited in both the majority and the dissenting opinions, both of which cite recent cases. Proper application of the rule is the point.

The fact is that the dissenting opinion attempts to apply the rule *too broadly*.

The effect of applying the true rule to the facts of the instant case would be to require every operator of a motor vehicle to get out and look all around and under the vehicle before starting same, regardless of whether the vehicle is parked in a public or a private driveway or along curbside, if, as there always are during free hours, children are in the general area or vicinity, regardless of the fact that none has been or is in a position of danger, or interested in the vehicle or the driver, or is an infant left unattended, or is in "close proximity" or the "near vicinity."

Such a misapplication of the true rule would be a useless sacrifice of substance to form.

FELTS, JUSTICE (dissenting).

With the utmost deference to my associates and to the learned Justice delivering the opinion of the Court, I must record my dissent from their holding Patillo was not negligent in causing the child's death sued for, and directing a verdict for defendants.

It seems plain to me this holding is based on an interpretation of the evidence that overlooks or misappreciates our rule for directing verdicts. That rule requires us, in considering defendants' motion for a directed verdict, to take the interpretation of the evidence most favorable to plaintiff:

"to look to all the evidence, to take as true the evidence for plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for plaintiff, to allow all reasonable inferences from it in

his favor; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied." (citing cases). *Smith v. Sloan,* 189 Tenn. 368, 376-377, 225 S.W.2d 539, 542, 227 S.W.2d 2.

" 'The question of the defendant's liability lawfully can be withdrawn from the jury and determined by the court as a question of law, when and only when the facts are undisputable * * *, and when the inference from the facts is so certain that all reasonable men, in the exercise of a fair and impartial judgment, must agree upon it' " (citing authorities). *Osborn v. City of Nashville,* 182 Tenn. 197, 204, 185 S.W.2d 510, 513.

It seems clear to me that the evidence, interpreted and taken as required by that rule, reasonably tended to prove, and from it the jury could well find, the following facts and circumstances on the issue of Patillo's negligence:—

1. *Patillo parked the automobile in plaintiff's front yard.* On the afternoon of the accident, Patillo, a 16-year-old boy, student at Pearl High School, was driving the automobile alone, going to see another boy of the same age, Leon Otey, who lived in a house on the east side of 24th Avenue, North, Nashville, just across the street from the home of plaintiff, located at 921 24th Avenue, North, and on the west side of it.

Patillo drove the automobile south along 24th Avenue to a point opposite the Otey home, and there parked the car on his right (the west) side of 24th Avenue. As parked, the car was headed south, its left wheels near the west edge of the paved part of 24th Avenue, and its right

wheels 5 or 6 feet over in plaintiff's front yard (see large map, Ex. 1 to test. Barrett). The mother of the child testified.

"Q. Now, then, while you were out on the [front] porch [of her home], did you have occasion to see the defendant, Val Patillo? A. Yes sir, I did. He drove up as I was standing on the porch.

"Q. Was the baby there with you, little Anthony [the child killed] there with you when he drove up? A. Yes. sir.

 * * * * * *

"Q. All right. When he drove up there what did he do, if anything? A. *He parked in our yard*" (Italics mine.)

On the map above referred to there is a red rectangle marking the place where the witnesses said Patillo parked the car. This shows that he parked it headed south with its right wheels 5 or 6 feet over in plaintiff's front yard, and its center over the walkway (two parallel rows of stepping stones) leading from the front steps toward 24th Avenue, and only about 15 or 16 feet from the front steps.

2. *Small children were playing in plaintiff's yard.* Plaintiff's house was near a school, and children from the school often played in plaintiff's yard. Plaintiff and his wife had seven very young children ranging in ages from 8 years down to two weeks, Anthony, the child that was killed, being 13 months old, and able to walk about. Patillo had often cut the grass in plaintiff's yard and knew plaintiff's children and other children played there.

At the time Patillo parked the car there, these little children were playing in the yard. As we have seen, the

mother and little Anthony were on the front porch, she standing on the porch, and he "sitting on the top step." Though Patillo parked the car within 20 feet of them, he said he did not see either the mother or the child, but did see some of the other children playing in the side of the yard at a swing north of where he parked the car.

Patillo's counsel asked him how far this swing was from where he parked the car, and he answered: "Oh, I guess it was about 30 yards, or something like that." While the evidence as to this is somewhat uncertain, I think it shows it was not that far; but the matter does not seem very important, since the swing was in plaintiff's yard and the children might be expected to play anywhere in the yard.

3. *The car's wheel ran over the child's body.* After Patillo got out of the parked car and went across the street to the Otey house, the mother told the two oldest children *"to go* to the side yard and bring up Anthony's play pen" so she could put him in it, and she went into the back of the house to get his "play things," leaving him on the porch (Italics mine).

While she was getting his toys, and had been gone only two or three minutes, she heard another child, a little boy, screaming; she ran, looked out the window, saw this child "hollering and pointing" toward the Patillo car "going off." She rushed out and found her child lying in her yard 6 or 7 feet south or in front of where the car had been parked. Its wheel had run lengthwise over his body.

Patillo said, "I felt a little bump as I pulled off." But he did not stop to see what he had struck. He gave as his explanation for not stopping that he thought his right rear wheel had run over a loose stepping stone in the

walkway in plaintiff's yard. The child was rushed to Vanderbilt hospital but on arrival was found to be dead.

4. *He drove off without looking to see whether a child might be in the way.* Patillo testified that when he left the Otey house he came at an angle diagonally across 24th Avenue toward the parked car, approaching its rear and left, got in on its left side, and drove off; and that *there were no children around the car.* On direct examination, he said:

"Q. Now, as you came back up to your car, were there any children around that car?

"A. No sir."

This statement was contradicted by the fact that there were then at least two children "around that car": (1) the child whom Patillo admittedly ran over and killed; and (2) the other little child who saw the killing and stood there screaming and pointing to Patillo as he drove off in the car.

This statement was also contradicted by Patillo himself. After saying there were no children around the car, he said he could not see whether any children were around it or not; that as he approached and got in the car on its left side, he could not see on its right side or in front of it. He also said that he didn't look under the car, or walk around it, to see whether any of these children might be there.

And his testimony on cross examination warranted the jury in inferring that he got in the car and drove off without taking the precaution to look, without looking to see, whether any of these children might be around the car or so near it as to be endangered by it. On cross examination he said:

"Q. And you knew children were playing there in the yard, as you have testified, is that right? A. Yes sir.

"Q. And you, knowing that, you got in your car and started it up and drove off, didn't you? A. But they were not around the car.

"Q. How do you know, son? A. Because I noticed them down in the lower part.

"Q. Now, you have just told me and you told your lawyer that when you got in the car you couldn't see far in front of your car to the right? A. Yes sir.

"Q. And you knew the children were playing in this yard. How did you know there were none out in front of your car, if you couldn't see out there? A. Well, I didn't.

"Q. I beg your pardon? A. I didn't.

"Q. The truth of the matter is, you don't know? A. No.

"Q. You didn't see out there? A. Well, I didn't.

As we have seen, he said when he parked the car he didn't see the mother or the child on the front porch but saw the other children playing at the swing, and added: "I didn't pay any attention to them" (tr. 76). Neither did he pay any attention to them as he got in the car and drove off, or so the jury could find.

As I understand, the majority opinion holds that on the facts of this case Patillo had no duty to look around or under the car to see if any of these little children might be near enough to be hurt by it. I think he was under

such a duty. One may expect self-help from adults but not from children. I think the governing principle was correctly stated by Chief Justice Green in *Townsley v. Yellow Cab Co.,* 145 Tenn. 91, 94, 237 S.W. 58:

" 'Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them, must calculate upon this, and take precaution accordingly.' *Ficker v. Cleveland, etc., R. Co.,* 7 Ohio N.P. 600."

Knowing these children were playing in the yard and might be expected around the car, Patillo was chargeable with the "duty of care and caution toward them" and was bound to look for them and take precaution accordingly; or so the jury might reasonably find.

While we have no case in this state involving the same state of facts as this case, a number of courts of high authority in our sister states have dealt with similar cases, and they support the view above expressed.

In *Stein v. Palisi,* 1955, 308 N.Y. 293, 125 N.E.2d 575, 577, the suit was for injuries to a Stein child 19 months of age. This child and some older children were playing on a lawn next door to the house where the Steins were staying. A private road led by this lawn on to some other houses beyond it. Defendant, a taxi driver, saw these children as he drove his taxi past this lawn and stopped or parked at a nearby house to discharge passengers.

As he drove away this 19-month-old child was found lying partly on the drive and partly on the lawn, his clothes torn, his body bloody, with abrasions and lacerations on his face and head as if he had been dragged in

476

the cinders on the road. There was no eye witness to the accident. It was not clear whether defendant had parked the taxi on the nearby lawn or in the road. Holding that the jury might find him negligent, the court said:

"If, as he drove out, the baby was in or close to the road, on the edge of which his mother found him, lying face down, Kaufman [the driver] obviously was under a duty to watch out for him, to avoid hitting him, and not to travel 'fast'—particularly so since he knew that young children were nearby. Even greater was his duty of careful observation and operation of his taxi, if he in fact drove off the road and onto the lawn, as the jury was entitled to find. In either event, and no matter where the actual impact occurred, a jury could find under all the circumstances that *when Kaufman failed to see the baby, he did not exercise caution commensurate with the danger presented*, and was therefore negligent" (Italics mine).

In *Tupman's Adm'r v. Schmidt*, 1923, 200 Ky. 88, 254 S.W. 199, a wholesale grocer's truck driver parked his truck, delivering groceries at a store. When he finished, he saw the Tupman child, six years of age, in the street behind his truck. He put the child on the sidewalk. He then went to the front of the truck, cranked it, started the engine, got in, started backing out, and backed over the child. It was held that he was negligent in not anticipating that the child might get in the way of the truck, and taking precautions accordingly.

In *Cunningham v. Sublett's Adm'r*, 1948, 306 Ky. 701, 208 S.W.2d 509, 511, defendant was delivering gasoline to the home of Sublett, and parked his truck beside a gasoline drum on Sublett's place. Two of the Sublett

children, a girl five years old and a boy 16 months old, came from their house out to the truck as the driver was transferring the gasoline from the truck into the drum. When he finished, he went to the rear of the truck and put away part of his apparatus.

Then he got in the truck on the left side, sat in the driver's seat, wrote out a sales ticket, and gave it to the little girl as she stood near the cab of the truck. The last time he saw the little boy alive he was standing at a gate some 20 feet from the rear of the truck. After the driver gave the girl the sales ticket and started the truck forward "he felt the truck wheels bounce on something." He crushed the child beneath the rear wheel. In holding the driver negligent, the court said:

> "We think *the possibility* was too manifest in this case that the baby might be lingering closely about with his older sister, who stayed at the side of the truck until it started, and that Gunter [driver] as a reasonably prudent person, ought to have *thoroughly investigated* that *possibility before driving away*" (Italics mine).

*Lovel v. Squirt Bottling Co. of Waconia*, 1951, 234 Minn. 333, 48 N.W.2d 525, 529, was a suit by a child 15 months of age for injuries caused her by defendant's negligence. Defendant's driver was delivering soft drinks to her father's store. This little girl and her brother, five years of age, were accustomed to play near the driveway where the truck was parked. The driver knew this.

After he finished the deliveries, he went into the store to make collections. A few minutes later he returned and *"without again walking around the truck,* he *got into it*

*from the left side, started the motor,* placed it in super low gear, and moved it ahead about a foot, when the motor died.'' Then he went to the front of the truck and found the little girl lying on the edge of the grass under the front wheel (Italics mine). The court said:

"It is well settled that where children are known *or may reasonably be expected to be in the vicinity of* a parked automobile or truck *a degree of vigilance commensurate with the greater hazard thereby created is required of the driver* of the automobile or truck to measure up to the standard which the law regards as ordinary care" (citing cases) (Italics mine).

Again: "Whether such a driver has measured up to this standard is, of course, a fact question for the jury * * *." (citing cases).

"Here, if the jury chose to believe that Aldridge [driver] was aware of the presence of Janis at the time he was making his deliveries, then such knowledge on his part would support a finding that *his failure to walk to the front of the truck to ascertain whether she was still there as he prepared to leave constituted negligence"* (Italics mine).

In *Coca Cola Bottling Co. of Black Hills v. Hubbard,* 8 Cir., 1953, 203 F.2d 859, 863, suit was brought for the death of a two-year-old child run over by a truck as it drove away from the sidewalk where it had been parked to make deliveries and pick up empty bottles. When the driver parked there, he knew children were playing nearby. As he came out of the store, he *walked along the left side of the truck, got in its left door,* and *drove off without seeing the child to the right and front of the truck.*

This was a suit depending upon diversity of citizenship and the local law of South Dakota where the accident happened. In an exceptionally well-reasoned opinion by Circuit Judge Sanborn, the court reviewed many cases including the Lovel case, supra, and said:

"One who parks his motor vehicle in the midst of or in close *proximity to playing children* of tender years, and *then runs over one of them, after taking no more precautions in starting his vehicle in motion than he would take were there no reason to anticipate the presence of children in dangerous proximity to his vehicle, can hardly be heard to say that as a matter of law he was free from actionable negligence*" (Italics mine).

Discussing the duty of a driver of a parked car to take care to avoid injury to children playing on or near the parked automobile, the text in 2A Blashfield's Cyclopedia of Automobile Law and Practice (perm. ed.), sec. 1509, says:

"If a driver has reason to anticipate that a child might be near his automobile, it is his duty to see that the way is clear before starting the vehicle into motion, but, if he has no reason to anticipate the presence of children near his car, negligence cannot be predicated on the mere fact that he started his machine, injuring the child."

It is true that some of the older cases broadly declare that such a driver is under no legal duty, before starting his vehicle, to look around or under it for the presence of small children, such as *Williams v. Cohn*, 1926, 201 Iowa 1121, 206 N.W. 823; *O'Neil v. Cochrane*, 184 Minn.

354, 238 N.W. 632; and other like cases relied on in the majority opinion.

Generally speaking, they were cases in which the driver "had not seen the injured child in the vicinity prior to the accident, and hence was not under obligation to exercise a higher degree of care commensurate with such knowledge." *Lovel v. Squirt Bottling Co. of Waconia,* supra.

But where, as here, one parks his automobile in his neighbor's front yard when he knows many small children are playing there, it certainly cannot be said that he owes them no duty of care but may act in disregard of their presence and safety.

On the facts here, the jury could reasonably find that Patillo owed these children a duty of care and vigilance commensurate with the danger to them and that he breached this duty and thereby caused the death sued for.

Likewise, the question of whether the mother was guilty of proximate contributory negligence, in leaving the child for the moment while she went in the house to get his toys, was a question for the jury. *Carey Roofing & Mfg. Co. v. Black,* 129 Tenn. 30, 36-37, 164 S.W. 1183, 51 L.R.A., N.S. 340, *Osborn v. City of Nashville,* supra.

Also, the question whether Viola Williams, registered owner of the automobile, was liable as the master for Patillo's negligence was a question for the jury. The statutory presumption that the car was being operated by her servant in her service (T.C.A. 59-1037) was not displaced, as a matter of law, by Patillo's testimony because he was involved in contradictions so that his credibility

was an issue for the jury. *Sadler v. Draper* 46 Tenn.App. 1, 326 S.W.2d 148, 156-157, and cases there cited.

Other questions made by defendant, I think, are without merit.

For these reasons, I think we should affirm the judgment of the Court of Appeals which affirmed the judgment of the Circuit Court.

BURNETT, J., concurs.